786 P.2d 395

**STATE of Arizona, Appellee,**

v.

**James William MARLOW, Appellant.**

**No. CR–87–0046–AP.**

Supreme Court of Arizona,
En Banc.

Nov. 9, 1989.

66

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Paul J. McMur-die, Asst. Attys. Gen., Phoenix, for appellee.

Kenneth Everett, Mohave County Public Defender, Kingman, and Michael J. Burke, LaPaz County Public Defender, Parker, for appellant.

JOHN FOREMAN, Superior Court Judge.

## JURISDICTION

James William Marlow was convicted after a jury trial of murder in the first degree and armed robbery. He was sentenced to death for the murder and sentenced to a consecutive, aggravated term of 21 years imprisonment for the armed robbery. A timely notice of appeal from the robbery conviction was filed, along with the automatic appeal of the death sentence. A.R.S. § 13–4033 and Rule 31.-2(b), Arizona Rules of Criminal Procedure. Our jurisdiction rests upon Article 6, § 5(3), of the Arizona Constitution and A.R.S. §§ 13–4031 and 13–4033. For the reasons given below, we affirm the defendant's convictions and sentence for robbery, but reduce the death sentence to life imprisonment without possibility of parole for twenty-five years.

## QUESTIONS PRESENTED

The briefs, the record and our resolution of this case require us to consider the following issues:

1. Should the trial court have granted the defendant's requests for a new attorney?
2. Was the defendant ineffectively represented by trial counsel?
3. Should the jury have heard testimony of an incriminating statement made by the defendant?
4. Should the trial court have given an accomplice instruction?
5. Should the trial court have given an intoxication instruction?
6. Should the trial court have given a manslaughter instruction?
7. Was there proof beyond a reasonable doubt to support the trial

court's finding that the defendant was previously convicted of a crime involving violence?

8. Was there proof beyond a reasonable doubt to support the trial court's finding that the murder was committed for pecuniary gain?

9. Was there proof beyond a reasonable doubt to support the trial court's finding that the murder was committed in an especially heinous and depraved manner?

10. Should the trial court have found and considered as a mitigating factor the disparity between the death penalty and the co-defendant's four year prison sentence?

11. Was the defendant properly sentenced to death?

## FACTUAL BACKGROUND

Joseph Mazzocco was a regular gambler at the Silver Slipper Casino in Las Vegas, Nevada. On the evening of August 26, 1985, Mazzocco got lucky and won nearly $1,500 playing keno. Mazzocco's luck ran out a few hours later about 12.5 miles into Arizona on the road from Las Vegas to Kingman. He was found dead at the bottom of a rocky slope beneath a turnoff along the highway.

A number of employees of the Silver Slipper Casino remembered Mazzocco, remembered him flashing the money that he had won, remembered him laughing and drinking. Mazzocco's good luck attracted the attention of two other men that evening. One of the men fit the description of the defendant and was tentatively identified by one of the employees as the defendant. The other man fit the description of Roger Cannon, a friend of the defendant who was originally also charged with the murder and robbery and who ended up as the prosecution's chief witness. The Silver Slipper employees later saw Mazzocco leave with the man who resembled Cannon.

The State relied upon the testimony of Cannon and another convict, Kenneth Miller, for most of its evidence tying the defendant to the murder and robbery.

Miller shared a cell with the defendant for about ten days while the defendant was awaiting trial. When he testified at the defendant's trial, Miller was serving a prison sentence that had been imposed in Yuma County for fraud and theft. Charges that had been pending against him in Mohave County were dismissed after he was sentenced on the Yuma charges. Miller's understanding was that the dismissal had nothing to do with his testimony in the defendant's trial.

Miller testified that the defendant told Miller that he and Cannon had taken Mazzocco from the Silver Slipper to the Gold Strike Saloon near Boulder Dam and then on into Arizona. According to Miller, the defendant admitted robbing Mazzocco and implied killing him but did not specifically admit the killing.

Cannon testified that he was living with the defendant in August of 1985. He gave a detailed account of their meeting with the victim at the Silver Slipper and how the defendant drove them in his car from Las Vegas across Boulder Dam into Arizona.

A short distance into Arizona the defendant stopped, pulled a knife and made the victim take off his shoes and socks. While the defendant continued to drive, Cannon testified, the victim was bound and robbed. Eventually the defendant drove off the road at a turnoff and stopped. Cannon said he stayed in the car while the defendant took the victim outside and kicked the victim over a cliff. The defendant then followed the victim to the bottom of the cliff and hit him several times on the head with a boulder. Cannon denied that he ever left the car and could only see the defendant at the bottom of the hill from the knees up.

Cannon admitted that he had four prior felony convictions, including one for manslaughter. In return for his testimony, Cannon received a stipulated sentence of four years in prison as the result of a plea bargain to aggravated robbery. He could not explain how a pack of cigarettes with his fingerprints was found by the police next to the victim's body at the bottom of the embankment.

The defense presented some evidence that the defendant had been in the Gold Strike Casino near Boulder Dam at the time that Cannon said the murder occurred. The defense also presented testimony from a witness who claimed to have seen Cannon driving the defendant's car on the night in question near the scene of the murder.

The defendant was charged with alternative counts of first degree murder. Count I alleged the offense to be premeditated. A.R.S. § 13–1105(A)(1). Count II alleged felony murder committed during a robbery. A.R.S. § 13–1105(A)(2). Count III alleged armed robbery. A.R.S. § 13–1904. The jury returned guilty verdicts on all three counts.

## DISCUSSION

### 1. Request for New Attorney

■ The defendant requested the trial court at least twice to replace his appointed counsel with a more experienced attorney. The requests were made by letter and motion. The requests were denied. However, the trial court appointed the public defender's office as co-counsel shortly before the trial. The attorney from the public defender's office assisted trial counsel during the trial and argued many of the motions and legal points outside the presence of the jury.

The defendant has a right to receive the reasonably effective assistance of counsel in all proceedings in the trial court. *State v. Gerlaugh*, 144 Ariz. 449, 698 P.2d 694 (1985). The defendant does not have the right to select the attorney that will represent him. *State v. DeLuna*, 110 Ariz. 497, 500, 520 P.2d 1121, 1124 (1974).

Although there was some friction between the defendant and trial counsel, it did not rise to the level of an irreconcilable conflict. The trial court did not abuse its discretion by denying the defendant's motions. *State v. LaGrand*, 152 Ariz. 483, 486–87, 733 P.2d 1066, 1069–70, *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987).

### 2. Ineffective Assistance of Counsel

■ The Mohave County Public Defender's Office, which now represents the defendant on appeal, alleges that trial counsel was ineffective because he did not move to suppress the identification of the defendant by one of the casino employees or move to suppress a statement made to one of the police officers.

We initially note that we disapprove of raising this type of claim of ineffective assistance of counsel on appeal by co-counsel at trial. *See State v. Suarez*, 137 Ariz. 368, 380, 670 P.2d 1192, 1204 (App.1983). There is nothing inappropriate in counsel on appeal, who was also trial counsel, claiming that government interference or other external factors precluded counsel from being effective. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984). However, it is inappropriate for counsel to claim that his or her own conduct of the trial or the conduct of co-counsel was not reasonably effective. The standard for determining whether counsel was reasonably effective is "an objective" standard which we feel can best be developed by someone other than the person responsible for the conduct. *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

> In *Suarez*, the court of appeals stated: [I]t is difficult for counsel to objectively review his [or her] own performance and zealously argue any inadequacies in that performance on behalf of his [or her] client. In addition, one can easily perceive the potential for abuse if appellate counsel is permitted to raise, evaluate and advocate his [or her] ineffectiveness as trial counsel.

137 Ariz. at 380, 670 P.2d at 1204.

We recently held that we will not consider a claim of ineffective assistance of counsel on "direct appeal absent a separate evidentiary hearing concerning counsel's actions or inactions. Only where we may clearly determine from the record that the ineffective assistance claim is meritless will we elect to consider the issue on direct appeal." *State v. Carver*, 160 Ariz. 167,

175, 771 P.2d 1382, 1390 (1989). The record on appeal in this case is not such that we can address and dispose of the issue of ineffective assistance of counsel. If this issue is raised in a post-conviction proceeding, it should be raised by counsel who is not associated with those who represented the defendant at trial.

### 3. Voluntariness of Statements

■ On October 20, 1985, Deputy Larry McGill of the Mohave County Sheriff's Office tried to talk to the defendant in Lafayette, Louisiana where the defendant was originally arrested. The record is not clear as to what defendant said at this first interview except that the he said nothing about any murder and requested that he be returned to his cell. McGill testified that he again visited the defendant in the jail after the defendant's return to Kingman. McGill testified that he again advised the defendant of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The defendant then admitted that he had been at the Silver Slipper Casino on a night in August of 1985 during the filming of a commercial. Casino employees testified the filming occurred on August 25, 1985. The defendant remembered being there with Roger Cannon and said that he often wore clothing similar to that described by the casino employees. He denied knowing the victim when shown a photograph. When asked about moving the victim's car from the Silver Slipper to a local motel, the defendant stated "that it all just came back to him." McGill testified that the defendant then "wanted to terminate our conversation." McGill testified that the defendant then stated that if the death penalty could be arranged within 30 days, that he would plead guilty providing that Roger Cannon was set free.

No objection to McGill's testimony was made by either trial counsel. The public defender's office now alleges it was funda-

mental error for the trial court to fail to suppress the testimony even though no objection was made.

Failure to make a timely objection to the introduction of evidence waives all except fundamental error. *See State v. McGann*, 132 Ariz. 296, 645 P.2d 811 (1982). Error is fundamental when it goes to the foundation of the case or is error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial. *State v. King*, 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). The testimony was equivocal and open to a number of interpretations. The record before us does not indicate that admission into evidence of the testimony in question was fundamental error.

### 4. Accomplice Instruction

■ The defense contends that there was no evidence supporting the accomplice instruction given to the jury. The prosecution urged the court to give the instruction and argued to the jury that the jury might believe that both Cannon and the defendant were actively involved in the killing or that Cannon himself committed the killing while the defendant was an accomplice.[1]

The cigarette package with Cannon's fingerprint found next to the body, along with other circumstantial evidence in the case, could clearly have supported an inference that Cannon killed the victim with the defendant's assistance. Therefore, an accomplice instruction was supported by the evidence and appropriately given. *See State v. LaGrand*, 152 Ariz. at 487, 733 P.2d at 1070.

### 5. Intoxication Instruction

■ The defense has assigned as error the failure of the trial court to give an intoxication instruction even though one was not requested. The defense conceded at oral argument that the citation to the record contained in the Opening Brief relating to the defendant's alleged behavior un-

---

1. The State's position before the trial court and jury that the defendant could be found guilty of murder as an aider or abettor, if they believed that Cannon committed the offense supports the giving of the accomplice instruction but is at odds with the State's position on the impact of the disparity in sentence between the defendant and Cannon. *See* discussion of disparity of sentence as mitigation below.

der the influence of alcohol actually was a reference to a description of the victim. We have searched the remainder of the transcript and find no evidence that would support the giving of an intoxication instruction. The failure to object to not giving an intoxication instruction now waives the claim of error. *State v. Whittle*, 156 Ariz. 405, 408, 752 P.2d 494 (1988). The theory of the defense was that the defendant did not commit the crime. Therefore, failure to give the intoxication instruction was not fundamental error. *Id.*

### 6. Manslaughter Instruction

■ No manslaughter instruction was requested by the defense. However, the claim is now made that a failure to give such an instruction was error. There was no evidence to support the giving of a manslaughter instruction, nor was such an instruction consistent with the defense theory of the case. Therefore, failure to give the instruction was not error. *State v. Vickers*, 159 Ariz. 532, 542, 768 P.2d 1177, 1187 (1989).

### ISSUES RELATING TO THE IMPOSITION OF THE DEATH PENALTY

The trial court found three aggravating factors in evaluating whether it was appropriate to impose the death penalty. The trial court found that the defendant had previously been convicted of assault with intent to commit a violent felony in New Mexico which was an offense involving violence. A.R.S. § 13–703(F)(2). The trial court also found that the motive for killing the victim was to eliminate the victim as a witness to the robbery which made pecuniary gain the impetus for the murder. A.R.S. § 13–703(F)(5). The trial court also found that, although the offense was not cruel, it was committed in an especially heinous or depraved manner, because the motive for the killing was elimination of a witness. A.R.S. § 13–703(F)(6).

The trial court found no mitigating factors either enumerated in Arizona's death penalty sentencing provision or otherwise proved by the defense. Because it found three aggravating factors [2] and no mitigating factors, the trial court concluded that imposition of the death penalty was mandatory.

### 7. Proof of the Prior Conviction

■ At the presentence hearing, the prosecution presented documentary evidence of two prior New Mexico convictions that occurred in 1979. One conviction was for burglary and the other was for assault with intent to commit a violent offense. N.M.Stat.Ann. § 30–3–3 (1978). There were no fingerprints appended to the documentary evidence of conviction. The prosecution presented the testimony of the Mohave County probation officer who had interviewed the defendant. The probation officer had asked the defendant why he went to the penitentiary in New Mexico. The probation officer said the defendant "told me." She also referred to the defendant speaking about a "burglary" in New Mexico.

The defense correctly contends that the proof of the prior conviction was insufficient. Unless the defendant admits his former conviction, the state must prove the conviction by introducing a certified copy of the conviction and establishing that the defendant is the person to whom the documentary evidence refers. *State v. Hauss*, 140 Ariz. 230, 231, 681 P.2d 382 (1984).

The documentary evidence submitted in this case adequately proves the existence of the prior conviction in question. However, the testimony identifying the defendant as the person convicted falls short of proof beyond a reasonable doubt that is required by A.R.S. § 13–703(C).

The proof in this case is similar to that in *State v. Lee*, 114 Ariz. 101, 559 P.2d 657 (1976). In *Lee*, the defendant's testimony that he had been to "the joint" and that he

---

**2.** The trial court may properly use the same evidence to support a finding of two aggravating circumstances. However, in its balancing of factors, the trial court may only weigh the evidence once so as to avoid any possibility of double punishment. *State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985).

had been convicted of an assault was found to be insufficient to support a conclusion that the defendant had previously been convicted of the offense of assault with a deadly weapon. 114 Ariz. at 105, 559 P.2d at 661.

In this case, the probation officer's testimony makes reference to an unspecific allusion by the defendant to a prison term for burglary in New Mexico. No reference at all was made to the assault with intent to commit violence conviction, which was the conviction upon which the aggravating factor finding was made in this case. The unspecific reference is not proof beyond a reasonable doubt.

## 8. Pecuniary Gain

■ The defense has argued that the death of the victim was somehow unexpected or accidental and unrelated to any taking of money. The evidence is quite to the contrary. The record and the verdict of the jury fully support the finding of the trial court that the motivation for the murder was to rob the victim and leave no witness to the robbery. We have previously held that a similar motivation and killing supported a finding that the murder was committed in expectation of pecuniary gain within the meaning of A.R.S. § 13–703(F)(5). *State v. Correll,* 148 Ariz. 468, 479, 715 P.2d 721, 732 (1986); *State v. Hensley,* 142 Ariz. 598, 603, 691 P.2d 689, 694 (1984).

## 9. Heinous and Depraved

The defense has challenged the constitutionality of Arizona's death penalty statute and specifically A.R.S. § 13–703(F)(6). The defense has alleged that "the heinous, cruel or depraved" aggravating factor found in § 13–703(F)(6) is unconstitutionally vague on its face and as applied to the defendant.

### 9.1 Constitutionality of A.R.S. § 13–703(F)(6)

■ The basis for the defense challenge to the constitutionality of A.R.S.

§ 13–703(F)(6) is an assertion that this court's opinions construing this aggravating factor have been "open ended" and have failed "to adequately channel the sentencing judge's discretion or to 'provide a meaningful basis for distinguishing the few cases in which [the death] penalty is imposed from the many cases in which it is not.'"

This argument tracks the conclusion of the United States Supreme Court in evaluating the interpretation of a similar provision of the Oklahoma death penalty statute in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). We recognize that a majority of the United States Court of Appeals for the Ninth Circuit has come to a similar conclusion about our interpretation of Arizona's "heinous, cruel or depraved" aggravating factor. *See Adamson v. Ricketts,* 865 F.2d 1011, 1029–39 (9th Cir.1988). We have previously indicated that we disagree with the conclusion of the Ninth Circuit. *State v. Vickers,* 159 Ariz. at 544, 768 P.2d at 1188–89; *State v. McCall,* 160 Ariz. 119, 125, 770 P.2d 1165, 1171 (1989). For the reasons we have previously stated, we will follow *Vickers* for now.

### 9.2 Application of A.R.S. § 13–703(F)(6)

■ The trial court found that the murder was committed in an especially heinous or depraved manner because the motive for the killing was to eliminate the victim as a witness to the robbery.[3] We have previously concluded that a killing motivated by a desire to eliminate the victim as a witness is heinous or depraved. *State v. Correll,* 148 Ariz. 468, 715 P.2d 721 (1986); *State v. Gillies,* 142 Ariz. 564, 691 P.2d 655 (1984); *State v. Smith,* 141 Ariz. 510, 687 P.2d 1265 (1984). The record supports the finding of the trial court.

### 10. Co-defendant's Sentence as Mitigation

■ The probation officer testified that in her opinion the fact that the co-defendant received a four year prison sentence was a "travesty of justice." The trial court

---

**3.** These are the same facts relied upon by the trial court to find that the offense was committed in expectation of pecuniary gain.

found that the co-defendant's sentence was not "disproportionate" to the defendant's sentence, because of the differing levels of evidence against each. The trial court then concluded that the disparity in sentence was not a mitigating factor to be balanced against the aggravating factors that were found.

It makes no difference whether the dramatic disparity in sentences created by the prosecutor's plea offer resulted from tactical considerations at trial or from who won the race to the prosecutor's door. The defendants were both originally charged with murder in the first degree. Unlike *State v. Lambright*, 138 Ariz. 63, 673 P.2d 1 (1983), the state requested an accomplice instruction and argued an accomplice theory to the jury which was supported by the evidence. Finally, a jury note indicates the jury consciously considered whether the co-defendant with a prior homicide conviction who received a four year term struck the fatal blow.

Simply because an accomplice has received leniency does not in itself prevent the imposition of the death penalty. *Id.* at 76, 673 P.2d at 14. We appreciate the difficult tactical choices that must sometimes be made by the prosecution in obtaining a conviction. However, once that conviction has been obtained, disparity between the sentences of accomplices of the sort that occurred in this case must be considered and may be found as a mitigating circumstance and weighed against any aggravating circumstances, in determining whether to impose the death penalty. *Id.*

11. Propriety of Death Sentence

■ This court has a responsibility to independently review the propriety of the imposition of the death penalty. In discharging that responsibility, we must decide whether we believe that the death penalty should be imposed based upon the record before us. As we recently stated:

> A finding merely that the imposition of the death penalty by the trial court was "factually supported" or "justified by the

evidence" is not the separate and independent judgment by this court that the death penalty warrants. *State v. Watson*, 129 Ariz. 60, 63, 628 P.2d 943, 946 (1981).

*State v. Rockwell*, 161 Ariz. 5, 16, 775 P.2d 1069, 1080 (1989).

In this case, there was no proof beyond a reasonable doubt of the aggravating factor found by the trial court relating to a prior conviction for a violent offense. The evidence that the killing was committed to avoid detection supports the finding of the aggravating factor of commission of murder for pecuniary gain and the finding of the aggravating factor that the killing was committed in a heinous or depraved manner. However, it may only be weighed once in evaluating whether the death penalty should be imposed. *State v. Tittle*, 147 Ariz. 339, 345, 710 P.2d 449, 455 (1985). Therefore, the result of our review discloses one substantial aggravating factor to be weighed against any mitigation that appears in the record. On the other side of the scale, the trial court did not weigh at all a substantial mitigating factor, the dramatic disparity in sentence between the defendant's death sentence and the co-defendant's four year prison term.[4]

As this court has recently indicated, where significant mitigating evidence is balanced against a single aggravating factor, a serious question is raised as to whether a death sentence is warranted. *State v. Rockwell*, 161 Ariz. at 16, 775 P.2d at 1080. When that occurs, we will continue to adhere to the principle that "where there is a doubt whether the death penalty should be imposed, we will resolve that doubt in favor of a life sentence." *Id.* at 16, 775 P.2d at 1080; *State v. Valencia*, 132 Ariz. 248, 250, 645 P.2d 239, 241 (1982).

## CONCLUSION

The judgment of guilt of first degree murder is affirmed. The sentence of death on the murder count is reduced to life imprisonment without the possibility of parole for 25 years pursuant to A.R.S.

---

**4.** While it could be argued that a disparity in sentence of the sort that occurred in this case should preclude the imposition of the death penalty as a matter of law, that issue is not before us. *See State v. Smith*, 138 Ariz. 79, 87, 673 P.2d 17, 25 (1983) (Feldman, J., concurring in part; dissenting in part).

§ 13–703(A). Although no error was alleged with regard to the aggravated sentence of 21 years on the armed robbery conviction which was consecutive to the sentence for the murder conviction, we have examined the sentence and the remainder of the record for fundamental error pursuant to A.R.S. § 13–4035. We find none.

FELDMAN, V.C.J., MOELLER, J., and EINO M. JACOBSON, and JAMES D. HATHAWAY, Court of Appeals Judges, concur.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, JACOBSON, Vice Chief Judge, Court of Appeals, Division One, HATHAWAY, Judge, Court of Appeals, Division Two, and JOHN FOREMAN, Judge, Maricopa County Superior Court, were designated to sit in their stead. CORCORAN, J., did not participate in the determination of this matter.