STATE ex rel. Chad Rendell
DAVIS, Relator,

v.

The Honorable David W.
SHINN, Respondent.

STATE of Missouri ex rel. Jeremiah
W. NIXON, Relator,

v.

The Honorable David W.
SHINN, Respondent.

Nos. WD 48308, WD 48383.

Missouri Court of Appeals,
Western District.

Feb. 8, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application to Transfer Denied
May 26, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., David B. Cosgrove, Robert J. Ahsens, Asst. Attys. Gen., Jefferson City, for relators.

John Bailey, Capital Public Defender, Patrick J. Berrigan, Asst. Public Defender, Kansas City, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and BERREY, JJ.

SPINDEN, Presiding Judge.

Immediately before the murder trial of Chad R. Davis began on September 14, 1993, the Honorable David W. Shinn, Judge, prohibited the state from seeking the death penalty. Earlier, he refused to grant Davis' motion to quash the state's notice of intent to seek the death penalty on the ground that the state's notice was filed late. Both matters became the issues of petitions for writs filed with this court. We issued a preliminary writ ordering Judge Shinn to stay further proceedings until we resolved these matters. In this opinion, we order him to vacate the order precluding the state from seeking the death penalty, and we deny the petition filed by Davis.[1]

The state has accused Davis of killing Critty Brown on January 5, 1991, at Hickman Mills High School in Kansas City when Davis was 16 years of age. The state alleges that Davis and four co-participants raped Brown before Davis shot her in the head to keep her from identifying them. The state did not charge three of the youths with any offense in connection with the incident. The state charged another alleged co-participant, Andre Green, with first degree murder, but dropped the charge. Davis asserts the state dropped the charge in return for Green's testimony against Davis.

---

1. The state also asks us to require the trial judge to recuse himself. Because this request came in the state's brief and not in its original petition, we do not address the issue.

On July 26, 1993, the state filed Notice of Intent to Seek the Death Penalty. The trial court scheduled Davis' trial to begin on September 14, 1993.

On September 13, 1993, Davis filed three motions: two asking the court to quash the state's notice of intent to prove aggravating circumstances and a third asking the court to preclude the state from seeking the death penalty "due to disproportionality in sentencing." We consider first the trial court's ruling on the third motion, concerning disproportionality.

## Proportionality

In his disproportionality motion, Davis argued:

... Of the five young men who participated in the events leading to Critty Brown's death, three were never charged with any criminal activity and one had his charge dismissed to testify against the accused. Only the accused stands to receive *any* [2] punishment for Critty Brown's death and he faces society's ultimate punishment. The stark unfairness of such a proposition is not only palpable and reprehensible, it is unconstitutional.

... "(T)he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100–year prison term differs from one of only a year or two." *Woodson v. North Carolina*, 428 U.S. 280, 304–305, 96 S.Ct. 2978, 2991–2992, 49 L.Ed.2d 944 (1976). The dramatic disparity between facing death upon conviction of murder in the first degree and walking free for giving testimony against someone similarly situated violates fundamental fairness and respect for the law. This dramatic disparity renders unconstitutional the State's attempt to seek the death penalty against Chad Davis.

The trial court overruled all of Davis' motions on September 13, 1993, on the ground, as Davis' attorney phrased it, "that without

evidence to [rule on the motions] it would be unable to do so."

The next day, immediately before trial was to begin, Davis renewed his motions. He presented the deposition testimony from the co-participants. He also proffered evidence regarding a "spent" shell casing of a .44 caliber shell recovered from the bedroom of one of the co-participants, Andre Green, less than two weeks after Brown's shooting and which was "consistent with the expended bullet" found at the crime scene. He proffered evidence that a pubic hair found on the victim's body matched Green's pubic hair. He also proffered evidence that the state had charged Green with first degree murder, but had dismissed the charge in exchange for his testimony against Davis. He further argued "that our review of the record in Missouri is that there has not been a 16–year–old person executed in the State of Missouri since the 18th century, and as you know, Mr. Davis was 16 at the time of this alleged offense[.]" [3]

The trial court announced that it was reversing its ruling on Davis' disproportionality motion. The court said, "I'm going to sustain the motion to preclude the State from seeking the death penalty ... due to disproportionality in sentencing. That's based on the defendant's age and the circumstances of this case[.]" The court further explained that its ruling was "not based on a review of [the] evidence [submitted by Davis in asking for reconsideration of the motions, but] on the age of the defendant, primarily, and the circumstances of this case that are set out in the probable cause statements[.]"

■ The state asserts in its petition for writ of prohibition that the trial court exceeded its jurisdiction by precluding the death penalty for reasons not supported by any constitutional standard. We agree.

The trial court was concerned primarily with Davis' age when he allegedly raped and shot Brown. The court also expressed concern about the "circumstances of this case" without elucidating the circumstances of which it was speaking. In this proceeding, Davis, arguing in defense of the trial court's

---

2. The emphasis was in the original.

3. Davis is now 19 years of age.

ruling, ignores the age issue and asserts that the state should not be permitted to charge only Davis with capital murder and ask for the death penalty, yet let the other co-participants escape any charges. Neither the age factor nor the apparent disparity among co-participants is the grist of "disproportionality in sentencing."

■ Proportionality refers to the appropriateness of the punishment for a particular crime. In *Weems v. United States,* 217 U.S. 349, 367, 30 S.Ct. 544, 549, 54 L.Ed. 793 (1910), the United States Supreme Court ruled that inherent in U.S. CONST.AMEND. VIII is the principle "that punishment for crime should be graduated and proportioned to offense."[4] In *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Supreme Court struck down Georgia's capital punishment statute as repugnant to the Eighth Amendment because the statute did not establish any safeguards for ensuring that the state did not arbitrarily apply the death penalty. "[T]he death penalty [was] exacted with great infrequency even for the most atrocious crimes and . . . there [was] no meaningful basis for distinguishing the few cases in which it [was] imposed from the many cases in which it [was] not." *Id.* at 313, 92 S.Ct. at 2764. In *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), the Supreme Court passed favorably on a death penalty statute enacted after *Furman:*

> A penalty . . . must accord with "the dignity of man," which is the "basic concept underlying the Eighth Amendment." . . . This means, at least, that the punishment not be "excessive." When a form of punishment in the abstract (in this case, whether capital punishment may ever be imposed as a sanction for murder) rather than in the particular (the propriety of death as a penalty to be applied to a

specific defendant for a specific crime) is under consideration, the inquiry into "excessiveness" has two aspects. First, the punishment must not involve the unnecessary and wanton infliction of pain. . . . Second, the punishment must not be grossly out of proportion to the severity of the crime.[5]

*Id.* at 173, 96 S.Ct. at 2925.

When the Supreme Court conducts proportionality review, it examines "the gravity of the offense and the severity of the penalty, . . . sentences imposed for other crimes, and . . . sentencing practices in other jurisdictions[.]" *Pulley v. Harris,* 465 U.S. 37, 43, 104 S.Ct. 871, 876, 79 L.Ed.2d 29 (1984).[6]

■ Proper review of proportionality in sentencing, then, is not concerned with whether Davis, as an individual, should receive the death penalty. The correct issue is whether any defendant in circumstances similar to Davis' should receive the death penalty. Davis does not raise this issue.

Instead, Davis emphasizes disparity of punishment among the co-participants. He does not stress the age factor—and rightly so. The United States Supreme Court has held that imposition of the death penalty on any person who murders with premeditation at the age of sixteen is not repugnant to the Eighth Amendment. *Stanford v. Kentucky,* 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989).

Nor can the lack of punishment of the alleged co-participants be a consideration in deciding if Davis may receive the death penalty. The Supreme Court of Missouri, facing a similar argument in *State v. Leisure,* 749 S.W.2d 366, 383 (Mo. banc 1988), said:

> Appellant claims that because other participants in the murder did not receive the death penalty, its imposition here is dispro-

---

**4.** The Supreme Court traced disproportionality back to the English Bill of Rights of 1689 where the phrase "cruel and unusual punishment" first appeared. "The English version appears to have been directed against punishments unauthorized by statute and beyond the jurisdiction of the sentencing court, as well as those disproportionate to the offense involved." *Gregg v. Georgia,* 428 U.S. 153, 169, 96 S.Ct. 2909, 2923, 49 L.Ed.2d 859 (1976).

**5.** We have omitted the citations.

**6.** The Supreme Court cited *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); and *Coker v. Georgia,* 433 U.S. 584 (1977).

portionate and excessive. The sentences received by [the other defendants] are not determinative of the proportionality issue. This Court has recognized that:

> Any capital sentencing scheme may occasionally produce an aberrational outcome.... [7] The issue when determining the proportionality of a death sentence is not whether any similar case can be found in which the jury imposed a life sentence, but rather whether the death sentence is excessive or disproportionate in light of similar cases as a whole (citations omitted).

*State v. Mallett,* 732 S.W.2d 527, 542 (Mo. banc 1987).

Lack of punishment of co-participants can be a mitigating factor, *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), but it is not a proper basis for a finding of disproportionality.[8]

Davis asserts, in his defense of the trial court's ruling, that we should not heed the instruction of the *Leisure* decision because the Supreme Court was construing a statute, § 565.035.3(3), RSMo 1986, which provides for Supreme Court review of all death sentences. He contends that he has an independent, constitutional right of proportionality which goes beyond the rights afforded him by § 565.035.3. He is wrong.

■ First, the United States Supreme Court declared in *McCleskey v. Kemp,* 481 U.S. 279, 306, 107 S.Ct. 1756, 1774–75, 95 L.Ed.2d 262 (1987), while construing the Eighth Amendment, "[A]bsent a showing that [a state's] capital punishment system operates in an arbitrary and capricious manner, [a defendant] cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not receive the death penalty." That a pros-

ecutor chooses not to charge alleged co-participants in a crime does not, in itself, violate constitutional concerns. As Justice White stated in his concurring opinion in *Gregg,* 428 U.S. at 225, 96 S.Ct. at 2949, "[D]efendants will escape the death penalty through prosecutorial charging decisions only because the offense is not sufficiently serious; or because the proof is insufficiently strong.... If the cases really were 'similar' in relevant respects it is unlikely that prosecutors would fail to prosecute them as capital cases[.]" Again, the issue is whether the state has properly made death a sentence for the type of crime Davis is charged with, and not whether Davis, in particular, should receive the death penalty. Different treatment between co-participants in a crime will not be a basis for a claim of unconstitutional disproportionality.

Second, the United States Supreme Court has made clear that any right of proportionality review beyond what § 565.035.3 provides is not mandated by the constitution. In *Pulley,* 465 U.S. at 43, 104 S.Ct. at 876, the court rejected a contention that proportionality review was constitutionally required in every capital murder case. Instead, the Court found that "some sort of prompt and automatic appellate review" can be enough to "promote the evenhanded, rational, and consistent imposition of death sentences[.]" *Id.* at 49, 104 S.Ct. at 878. Moreover, the Supreme Court considers "[p]roportionality review ... to be an additional safeguard against arbitrarily imposed death sentences, but [the Court] certainly [does] not hold that comparative review [is] constitutionally required." *Id.* at 50, 104 S.Ct. at 879.

The Supreme Court of Missouri echoed this position in *State v. Ramsey,* 864 S.W.2d 320 (Mo. banc 1993), when it found the appellant had no constitutional right to proportionality review. Rather, the legislature provid-

---

7. The material was deleted in the original.

8. Davis relies heavily on *State v. Marlow,* 163 Ariz. 65, 786 P.2d 395 (1989), as supporting his contention that disparity of sentencing among co-defendants is proper proportionality review. His reliance is misplaced. That decision rested on disparity of sentencing as a mitigating factor, not as a part of proportionality of sentencing analysis. The court reversed a death sentence because "the trial court did not weigh at all a

substantial mitigating factor, that of the dramatic disparity in sentence between the defendant's death sentence and the co-defendant's four year prison term." Id. 163 Ariz. at 72, 786 P.2d at 402. Indeed, in a footnote, the court added, "While it could be argued that a disparity in sentence of the sort that occurred in this case should preclude the imposition of the death penalty as a matter of law, that issue is not before us." Id. at n. 4.

ed for additional protection for defendants by enacting § 565.035. "Although not constitutionally required, § 565.035.3 requires this Court to conduct an independent review of a defendant's death sentence." *Ramsey*, 864 S.W.2d at 327. Thus, Davis actually receives more protection from the Missouri statute than he does under either the United States or Missouri constitution.

Davis, of course, cannot rest his argument on § 565.035 because that statute applies only after the death penalty is imposed and judgment is final. *See* § 565.035.1. Because we find no independent constitutional basis or statutory basis for a finding of disproportionality, we remand this case with instructions that the trial court vacate its order of September 14, 1993, granting Davis' motion to preclude the state from seeking the death penalty because of disproportionality in sentencing.

### Appropriateness of Writ of Prohibition

■ Davis argues that a writ of prohibition is not appropriate in this case. We disagree. The Supreme Court of Missouri addressed this issue in *State ex rel. Westfall v. Mason*, 594 S.W.2d 908 (1980) (*rev'd on other grounds by Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270), in which the trial court, on a motion by the defense, refused to allow the prosecution to seek the death penalty. The prosecution sought a writ of prohibition. In response to the defendant's argument that a writ of prohibition was inappropriate, the Supreme Court of Missouri held that writ was a proper remedy. The court reasoned that the prosecution had a limited right of appeal, and the trial court had exceeded its jurisdiction because nothing under the federal or state constitutions prevented the prosecution from seeking the death penalty. *See also State ex rel. Dally v. Elliston*, 811 S.W.2d 371 (Mo. banc 1991); *State ex rel. Peach v. Bloom*, 576 S.W.2d 744 (Mo. banc 1979); and *State ex rel. Westfall v. Campbell*, 637 S.W.2d 94 (Mo. App.1982).

### Davis' Petition for Prohibition

Davis complains that the state has not provided him adequate notice of its intent to seek the death penalty or of the aggravating factors it intends to prove and the witnesses it will use in the second phase of the trial. He contends that the trial court abused its discretion by overruling Davis' motions [9] and by granting the state's motions to compel disclosure by Davis. Davis argues that "[p]rohibition lies here because [the trial court] has abused [its] discretion both in allowing the State to seek the death penalty without adequate notice to [Davis] and in denying [Davis] constitutionally and statutorily mandated discovery[.]"

■ Much of Davis' argument rests on his complaint that the timing of the state's notice of intent to seek the death penalty and its recitation of the aggravating circumstances and list of witnesses it will use in any penalty phase trial denies Davis due process in that he has inadequate time to prepare his case. That the case is stayed during this court's consideration of the writs at hand makes any issue of timeliness of notice moot.

■ Davis also asserts that the lack of "disclosure of penalty phase evidence" by the state "[denies] him the opportunity to challenge the State's alleged aggravating circumstances pretrial." An abuse of discretion occurs when the "trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Shirrell v. Missouri Edison Company*, 535 S.W.2d 446, 448 (Mo. banc 1976) (citations omitted). This court finds no basis for concluding that the trial court's rulings were arbitrary or unreasonable.

### Conclusion

We conclude that the trial court erroneously concluded that the state's seeking the death penalty in this case constituted "disproportionality in sentencing." A writ of

---

**9.** The trial court overruled Davis' motion to quash aggravating circumstances, motion for a bill of particulars, objection to the state's motion to compel disclosure, and objection to the state's request for penalty phase disclosure.

prohibition is an appropriate remedy to correct the error. Therefore, we issue this order in prohibition ordering the trial court to set aside its ruling of September 14, 1993, prohibiting the state from seeking the death penalty against Chad Davis. We deny Davis' request for a writ of prohibition or mandamus.

All concur.