NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BYRON TRENELL HAMPHILL WOOTEN, *Appellant.*

No. 1 CA-CR 17-0136
FILED 4-19-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-119929-001
The Honorable Danielle J. Viola, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　　Byron Trenell Hamphill Wooten appeals his 13 convictions of sex trafficking, Class 2 felonies, one conviction of unlawful imprisonment, a Class 1 misdemeanor, and the resulting sentences. Wooten's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), certifying that, after a diligent search of the record, he found no arguable question of law that was not frivolous. Wooten was given the opportunity to file an initial supplemental brief but failed to follow length and form requirements. *See* ARCAP 14(a); Ariz. R. Crim. P. 1.6(b)(E). Wooten's brief was stricken, and he was given an opportunity to file a brief in accordance with length and form requirements. Wooten then filed a conforming supplemental brief. Counsel asks this court to search the record for arguable issues. *See Penson v. Ohio*, 488 U.S. 75 (1988); *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999). After reviewing the record, we affirm Wooten's convictions and sentences.

### FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**　　　　A.A. contacted Wooten, a friend from high school, after losing her home sometime between February and March of 2016. Wooten agreed to help A.A., allowed her to move into his home, and brought her to San Diego. Soon after moving in, Wooten instructed A.A. that she would need to prostitute herself to make money to assist in paying bills.

**¶3**　　　　A.A. did not wish to prostitute herself, but feared she would lose her place to stay if she did not. Wooten instructed A.A. on the rules of prostitution including whom to talk to, where to go, how to dress, and what to charge. Wooten created online advertisements soliciting sexual services

---

[1]　　We view the evidence in the light most favorable to sustaining the convictions and resulting sentences. *See State v. Guerra*, 161 Ariz. 289, 293 (1989).

from A.A. Wooten also set the amount of money A.A. was to make each night and kept all the money.

¶4        Wooten first brought A.A. to Phoenix in March 2016, with the intention of testing the Phoenix prostitution market, and later brought A.A. back to Phoenix with another woman. Phoenix police made first contact with A.A. while she was working and told her they would assist her if she wanted to get out of prostitution. A.A. remained fearful of Wooten but accepted a detective's contact information. The next day A.A. contacted the detective and told her she wanted to get out of prostitution. A.A. and the detective met and faked A.A.'s arrest to remove her from Wooten without suspicion. A.A. assisted the police in investigating Wooten, and the police took her to a domestic violence shelter.

¶5        After being brought to the domestic violence shelter, A.A. contacted Wooten in an attempt to retrieve her belongings from him. Wooten refused to give A.A. her belongings unless she left the shelter with him, and A.A. agreed. Shortly after leaving with Wooten, A.A. was able to contact police, and police again removed her from the situation. Wooten was arrested soon after.

¶6        Wooten was indicted on 13 counts of sex trafficking and two counts of kidnapping. After a 10-day jury trial, Wooten was found guilty on 13 counts of sex trafficking, Class 2 felonies, and one count of unlawful imprisonment, a Class 1 misdemeanor. The jury found as aggravating factors that the offenses were committed in consideration for the receipt, or in the expectation of the receipt, of pecuniary value and the offenses caused physical, emotional, or financial harm to the victim for Counts 1–7 and Count 14. Additionally, the jury found that the offense involved the infliction or threatened infliction of serious physical injury and the defendant committed the offenses in an especially heinous, cruel, or depraved manner for Counts 8-13.

¶7        The court sentenced Wooten to seven concurrent aggravated terms of 10 years' imprisonment for Counts 1 through 7, with 303 days of presentence incarceration credit. The court sentenced Wooten to six concurrent aggravated terms of 18.5 years' imprisonment for Counts 8 through 13. The court ordered the sentences for Counts 8 through 13 to run consecutive to Counts 1 through 7. The court sentenced Wooten to a term of six-months' imprisonment for Count 14 for unlawful imprisonment, to run concurrent to Counts 1 through 7. Wooten timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.01(A)(1), 13-4031, and -4033(A).

**DISCUSSION**

**¶8**        We have read and considered counsel's brief and have reviewed the record for any arguable issues. *See Leon*, 104 Ariz. at 300. We find none.

**¶9**        In his supplemental brief, Wooten raises the following issues: multiplicitous charging and sentencing, violation of Wooten's Sixth Amendment right to a speedy trial, multiple violations of the Arizona Rules of Evidence, improper or insufficient jury instructions, improper racial representation on the jury, sufficiency of the evidence, imposition of unduly harsh sentences, prosecutorial misconduct, and that the cumulative effect of errors at and before trial deprived Wooten of due process.

**A.        The Superior Court Did Not Impose Multiplicitous Sentences.**

**¶10**       Wooten first argues his convictions for Counts 1 through 13 were multiplicitous, and therefore violate double jeopardy. The Double Jeopardy Clause of the Fifth and Fourteenth Amendments "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984); *Lemke v. Rayes*, 213 Ariz. 232, 236, ¶ 10 (App. 2006). "[I]f multiple violations of the same statute are based on the same conduct, there can be only one conviction." *State v. Jurden*, 239 Ariz. 526, 529, ¶ 11 (2016). "We review de novo whether double jeopardy applies." *State v. Powers*, 200 Ariz. 123, 125, ¶ 5 (App. 2001).

**¶11**       Wooten claims Counts 1 through 13, all convictions for sex trafficking, were all for a single offense despite acknowledging that each count alleged an offense committed at different times. There was no error. In closing argument, Wooten's attorney explained to the jury the distinction between the dates and that the jury must find that Wooten's "conduct was present on that day for that act[.] . . ." Additionally, in the jury instructions, the superior court specifically instructed, "[the jury] must decide each count separately on the evidence with the law applicable to it, uninfluenced by your decision on any other count."

**¶12**       To determine whether error has occurred, "we may consider the jury instructions as given, the evidence at trial, the parties' theories, and the parties' arguments to the jury." *State v. Felix*, 237 Ariz. 280, 285, ¶ 16 (App. 2015). We presume that jurors follow the instructions provided to them. *State v. Payne*, 233 Ariz. 484, 518, ¶ 151 (2013). The acts supporting Counts 1 through 13 were separate and distinct from one another, and Wooten's attorney properly explained to the jury that separate acts had to

be found to convict Wooten on the respective counts. Wooten's convictions and sentences were separate and distinct, and, accordingly, Wooten's convictions and sentences for Counts 1 through 13 did not constitute multiplicitous sentences.

**B.     The Superior Court Did Not Violate Wooten's Sixth Amendment Right to a Speedy Trial.**

**¶13**          Wooten contends his Sixth Amendment right to a speedy trial was violated because his trial was continued past its initial final day. Under Rule 8.5, the superior court may grant a continuance for either party upon a finding of "extraordinary circumstances . . . and that delay is indispensable to the interests of justice." "When it is alleged that the superior court improperly granted a Rule 8 continuance '[w]e will not disturb a ruling . . . absent a clear abuse of the trial court's discretion.'" *Snyder v. Donato*, 211 Ariz. 117, 119, ¶ 7 (App. 2005) (alteration in *Snyder*) (quoting *State v. Lukezic*, 143 Ariz. 60, 68 (1984)).

> [T]he trial court is the only party in a position to judge the inconvenience of a continuance to the litigants, counsel, witnesses, and the court, and further is the only party in a position to determine whether there are "extraordinary circumstances" warranting a continuance and whether "delay is indispens[a]ble to the interests of justice."

*State v. Hein*, 138 Ariz. 360, 368 (1983) (quoting Ariz. R. Crim. P. 8.5(b)).

**¶14**          Wooten's initial last day to begin trial was set for October 9, 2016, 150 days after Wooten's arraignment. Wooten's trial was continued three times until it finally began on December 12, 2016, 64 days after the initial last day. However, while the State moved to continue the trial the initial two times, Wooten moved to continue the trial into December.

**¶15**          The superior court granted both of the State's motions to continue trial as "indispensable to the interests of justice" because of the prosecutor's trial conflict and to accommodate Wooten's request to interview out-of-state victims pretrial. The record fails to indicate the superior court abused its discretion by granting the State's motions to continue trial.

**C.      The Superior Court Did Not Violate Rule 404 By Admitting Jail Calls as Evidence.**

¶16      Wooten contends that the superior court abused its discretion by admitting his jail calls under Arizona Rule of Evidence 404(b). Before trial, the State moved to introduce Wooten's jail calls. The superior court held a hearing and ultimately granted the motion.

¶17      We review a court's admission of evidence pursuant to Rule 404(b) for an abuse of discretion. *State v. Lehr*, 227 Ariz. 140, 147, ¶ 19 (2011). Evidence of prior acts is not admissible to prove the character of a person to show action in conformity with the previous conduct. Ariz. R. Evid. 404(b). However, prior acts may be admissible if the evidence is offered for another proper purpose. *Id.* Prior to admitting such evidence, the court should conduct a hearing to determine its admissibility.

> Before admitting prior bad act evidence, a trial court should determine that: (1) the evidence is proffered to show something other than conduct in conformity with the prior acts, pursuant to rule 404(b); (2) the evidence is legally and logically relevant under rule 402; (3) the probative value of the evidence substantially outweighs the risk of unfair prejudice under rule 403; and (4) defendant has not been denied an appropriate limiting instruction under rule 105.

*State v. Hyde*, 186 Ariz. 252, 276 (1996).

¶18      The State presented evidence of Wooten's own statements in the form of jail calls, along with testimony from the lead detective and expert in the case, which included information related to the investigation and the statements of other witnesses and the victim. The calls demonstrated that Wooten continued to instruct other women on how to prostitute themselves and evade police detection while he was in jail. The State presented the jail calls to show Wooten's knowledge, planning, and intent to continue his prostitution ring. The State did not present the jail calls to demonstrate Wooten's character as an individual who commits sex trafficking offenses. Considering the testimony and evidence presented at the hearing, the superior court did not abuse its discretion by granting the State's motion to introduce Rule 404(b) evidence.

**D.    The Superior Court Did Not Violate the Rule Against Hearsay by Admitting the Jail Calls as Evidence.**

**¶19**        Wooten contends the superior court violated the rule against hearsay by allowing his jail calls into evidence. Wooten failed to object on this ground before or during trial. When a defendant fails to object at trial to the introduction of evidence, we review only for fundamental error. *See State v. Marlow*, 163 Ariz. 65, 69 (1989); *see also State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

**¶20**        Fundamental error is "rare" and is an "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Henderson*, 210 Ariz. at 567, ¶ 19 (quoting *State v. Hunter*, 142 Ariz. 88, 90 (1984)); *see also State v. Morris*, 215 Ariz. 324, 337, ¶ 59 (2007). The defendant has the burden to prove error, that the error was fundamental, and that the error caused prejudice. *Henderson*, 210 Ariz. at 567−69, ¶¶ 19, 23−24, 26.

**¶21**        Rule 801(c) defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, "offer[ed] in evidence to prove the truth of the matter asserted." However, Rule 801(d)(2) provides that such statements are "not hearsay" if they were made by one party and offered by the opposing party. Here, Wooten's statements in the jail calls were offered against him by the State. Therefore, the jail calls do not constitute hearsay. *State v. Buccheri-Bianca*, 233 Ariz. 324, 333, ¶ 33 (App. 2013) (defendant's recorded statement admitting guilt properly admitted as a statement by a party opponent).

**E.    The Superior Court Did Not Err by Determining the Probative Value of the Jail Calls Was Not Outweighed by a Danger of Unfair Prejudice.**

**¶22**        Wooten contends the superior court abused its discretion by determining the probative value of the jail calls outweighed any unfair prejudice. Ariz. R. Evid. 403. Wooten claims that any indication he was incarcerated before the trial should have been precluded from trial.

**¶23**        All relevant evidence is admissible if the law does not otherwise prohibit it. Ariz. R. Evid. 402; *State v. Kiper*, 181 Ariz. 62, 65 (App. 1994); *see also* Ariz. R. Evid. 403 (although relevant, evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). In

conducting a Rule 403 analysis, the superior court should first "assess the probative value of the evidence on the issue for which it is offered." *State v. Gibson*, 202 Ariz. 321, 324, ¶ 17 (2002). This assessment is then weighed against potential unfair prejudice to the opposing party. *Girouard v. Skyline Steel, Inc.*, 215 Ariz. 126, 129, ¶ 11 (App. 2007).

**¶24** "Because this is a weighing of factors that cannot easily be quantified, substantial discretion is accorded the trial judge." *Gibson*, 202 Ariz. at 324, ¶ 17 (internal quotations omitted); *see also Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008) ("[Q]uestions of relevance and prejudice are for the District Court to determine in the first instance."). The Rule 403 balancing process is a specific function of the superior court that this court reviews only for an abuse of discretion. *Girouard*, 215 Ariz. at 129, ¶ 10; *see Mendelsohn*, 552 U.S. at 384 ("Under this deferential standard, courts of appeals uphold Rule 403 rulings unless the district court has abused its discretion."). Further, in reviewing the superior court's evidentiary ruling, we must view "the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect." *Kiper*, 181 Ariz. at 66.

**¶25** Given the testimony and evidence discussed above, the superior court did not abuse its discretion by determining the probative value of Wooten's jail calls outweighed their potential unfair prejudicial affect.

**F.     The Superior Court Did Not Err by Qualifying the State's Expert Witness and Instructing the Jury on How to Consider Expert Testimony.**

**¶26** Wooten contends the superior court abused its discretion by qualifying Detective Decoufle as an expert witness. "Whether a particular witness possesses sufficient qualifications to qualify as an expert is . . . within the trial court's discretion, and such a determination will not be upset on appeal in the absence of a clear abuse of discretion." *State v. Mosley*, 119 Ariz. 393, 400 (1978).

**¶27** Arizona Rule of Evidence 702(a) states "if . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," a witness "qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." "The test of whether a person is an expert is whether a jury can receive help on a particular subject from the witness." *State v. Davolt*, 207 Ariz. 191, 210, ¶¶ 70, 73–76 (2004) (a detective who had attended crime

scene management and homicide investigation classes, as well as watched two training videos, was qualified to testify on blood spatter analysis; although his training was not extensive, it was more than a lay person receives and was enough to permit him to testify as an expert). An expert is not required to have the "highest possible qualifications" to be qualified to testify about a particular matter; "the extent of training and experience of an expert goes to the weight, rather than the admissibility, of his testimony." *Mosley*, 119 Ariz. at 400.

¶28 Decoufle, at the time of trial, had worked for the Phoenix Police Department for 16 years and completed detective, undercover, interview, and human trafficking training prior to the instant case. Furthermore, Decoufle was the primary or secondary detective for between 40 and 50 investigations and holds a master's degree in human services focusing on psychology. Considering Decoufle's extensive experience and training, we cannot say that the superior court abused its discretion by qualifying her as an expert witness.[2]

## G.     The Empaneled Jury Consisted of Wooten's Peers.

¶29 Wooten contends the jury empaneled for his trial did not consist of his peers and the practice of selecting alternate jurors through random draw is unacceptable as a matter of policy. To prove an equal protection violation associated with jury selection,

> The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time . . . . Finally, . . . a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Castaneda v. Partida*, 430 U.S. 482, 494 (1977) (citations omitted).

---

[2]     Wooten contends that because Decoufle should not have been qualified as an expert, the superior court's instructions regarding expert witnesses were improper. Because the superior court did not abuse its discretion by qualifying Decoufle as an expert, this contention is moot.

¶30　　　　Wooten has failed to establish the *prima facie* case of an equal protection violation associated with jury selection process because he failed to assert how Arizona law has singled out a distinct class to which he belongs and failed to prove the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called as jurors, "*over a significant period of time.*" *Id.* (emphasis added).

¶31　　　　Additionally, Wooten contends choosing alternate jurors through a random drawing is unacceptable as a matter of policy. The process used to determine which jurors are alternates is known as simple random sampling, whereby "we select a group of subjects (a sample) . . . from a larger group (a population)." YALE UNIV. DEP'T OF STATISTICS AND DATA SCI., http://www.stat.yale.edu/Courses/1997-98/101/sample.htm (last visited Apr. 13, 2018). Every empaneled juror has an equal chance of being selected as an alternate (or conversely a deliberating juror). *See id.*

¶32　　　　There is no state or federal guarantee to a jury consisting of jurors perfectly representative of a given state or county. A simple random sampling to determine which jurors are alternates ensures all jurors have an equal probability of being chosen as an alternate. *See* YALE UNIV. DEP'T OF STATISTICS AND DATA SCI., http://www.stat.yale.edu/Courses/1997-98/101/sample.htm. Thus, choosing jurors as alternates randomly is acceptable as a matter of policy.

## H.　　The Evidence Presented at Trial Was Sufficient to Convict.

¶33　　　　Wooten contends the State presented insufficient evidence at trial to convict him for Counts 1 through 14. We review the sufficiency of the evidence *de novo. State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). We view the evidence in the light most favorable to upholding the verdicts and resolve all conflicts in the evidence against Wooten. *See State v. Girdler*, 138 Ariz. 482, 488 (1983). We do not reweigh the evidence or determine the credibility of witnesses. *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

¶34　　　　We will not reverse unless "there is a complete absence of probative facts to support the conviction[s]." *State v. Scott*, 113 Ariz. 423, 424–25 (1976). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). Sufficient evidence may be either direct or circumstantial, and may support differing reasonable inferences. *State v. Anaya*, 165 Ariz. 535, 543 (App. 1990).

¶35         Here, the evidence summarized above was sufficient to support the jury's verdicts. The victim, as well as multiple investigators, detectives, and experts all testified at trial. The jury found the testimony of witnesses and exhibits admitted credible and convicted Wooten of Counts 1 through 14. There is sufficient evidence to support the conclusion reached by the jury.

## I.      Wooten's Sentences Were Not Unduly Harsh.

¶36         Wooten contends there is no statutory basis to impose a $20 probation assessment upon his release from prison. Under A.R.S. § 12-114.01(A), "in addition to any other penalty, fine, fee, surcharge or assessment authorized by law, a person shall pay [a probation] assessment of twenty dollars on conviction for a criminal offense . . . ."

¶37         Wooten further contends that his sentences should all run concurrently because Counts 1 through 14 were really the same crime, the superior court's reason for imposing consecutive sentences was not supported by the record, the superior court should not have sentenced Wooten for repetitive offenses, and the aggravating factors found by the jury were not supported by the record.

¶38         "A trial court has broad discretion in sentencing and, if the sentence imposed is within the statutory limits, we will not disturb the sentence unless there is a clear abuse of discretion." *State v. Ward*, 200 Ariz. 387, 389, ¶ 5 (App. 2001).

¶39         As noted above, Counts 1 through 13 were committed multiple times on different days. Count 14 was a wholly separate crime. Considering the testimony and evidence presented at trial, the superior court did not abuse its discretion by sentencing Wooten to seven concurrent aggravated terms of ten years' imprisonment for Counts 1 through 7, six concurrent aggravated terms of 18.5 years' imprisonment for Counts 8 through 13, to run consecutively to Counts 1 through 7, and a term of six-months' imprisonment for Count 14 for unlawful imprisonment, to run concurrent to Counts 1 through 7.[3]

---

[3]      Wooten contends the prosecutor committed prosecutorial misconduct by overcharging him with thirteen counts of sex trafficking. Because we find the evidence supports the convictions, we find the contention meritless.

**J.      Wooten Was Not Deprived of a Fair Trial or Due Process of Law.**

**¶40**      Wooten contends the cumulative error occurring at and before his trial constituted fundamental error depriving him of due process of law. If any "incidents contributing to a finding of misconduct are identified, we must evaluate their cumulative effect on the trial." *State v. Roque*, 213 Ariz. 193, 228, ¶ 155 (2006), *abrogated on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254 (2017). Because we are unable to find any errors in the record, we reject Wooten's contention.

**¶41**      Wooten was present and represented by counsel at all stages of the proceedings against him. The record reflects the superior court afforded Wooten all his constitutional and statutory rights, and the proceedings were conducted in accordance with the Arizona Rules of Criminal Procedure. The court conducted appropriate pretrial hearings, and the evidence presented at trial and summarized above was sufficient to support the jury's verdicts. Wooten's sentences fall within the range prescribed by law, with proper credit given for presentence incarceration.

## CONCLUSION

**¶42**      Wooten's convictions and sentences are affirmed. After the filing of this decision, defense counsel's obligations pertaining to Wooten's representation in this appeal will end after informing Wooten of the outcome of this appeal and his future options, unless counsel's review reveals an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984).

