887 P.2d 592

**STATE of Arizona, Appellee,**

v.

**Richard D. KIPER, Appellant.**

**No. 1 CA–CR 92–0947.**

Court of Appeals of Arizona, Division 1, Department B.

Aug. 16, 1994.

Redesignated as Opinion and Publication Ordered Oct. 24, 1994.

Review Denied Jan. 24, 1995.

---

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and Colleen L. French, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

Richard D. Kiper (defendant) appeals from his convictions and the sentences imposed on one count of fraudulent schemes and artifices and five counts of theft. His appeal raises three issues:

1. Did the trial court err in permitting the state to introduce evidence that defendant had a criminal background?

2. Did the prosecutor commit fundamental error by making improper arguments concerning defendant's prior convictions?

3. Did the trial court err in refusing to further examine a juror about her guilty verdicts after the jury had unanimously confirmed the verdicts when polled by the court?

For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

On appeal, we view the evidence at trial in the light most favorable to sustaining the verdict, resolving all reasonable inferences against defendant. *State v. Atwood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993). Defendant was employed from 1983 to 1990 as a parttime bookkeeper at an Arabian horse farm owned by Bud and Louise Adams in Scottsdale, Arizona. Shortly after the Adamses fired defendant in March 1990, they discovered that he had embezzled $84,000 from them over a period of five years by altering payroll checks made payable to defendant and his wife.

Defendant was indicted on one count of fraudulent schemes and artifices in violation of A.R.S. § 13-2310, a class 2 felony, and five counts of theft in violation of A.R.S. § 13-1802, each a class 3 felony. The state subsequently amended the indictment to allege that defendant had five prior felony convictions.

A mistrial was declared during defendant's first trial because of juror misconduct. At his second trial, the jury found defendant guilty of all offenses as charged. After the verdicts were rendered, defendant admitted to his five prior felony convictions. The trial court sentenced defendant to six concurrent prison terms, the longest being 18.75 years on the fraudulent schemes charge. In addition, defendant was ordered to pay $84,000 in restitution and $600 in felony assessment fees. Defendant timely appealed.

### DISCUSSION

A. *Evidence of Defendant's Prior Criminal Background*

Prior to his first trial, defendant made a motion in limine requesting that the state be precluded from introducing evidence of his prior felony convictions: two counts of arson and three counts of larceny that had occurred in Florida in June and August 1975. The trial court granted the motion.

As part of his defense, defendant alleged that the charges against him were false and brought by the Adamses in retaliation for public accusations he made of improper conduct by the Arabian Horse Association. During the direct examination of a defense

witness, defendant's counsel elicited testimony that, shortly before defendant was terminated by the Adamses, Bud Adams, the immediate past president of the association, did not want defendant working on the association's books because, among other things, "[h]e had some things in his background that they found out about." When defendant's counsel completed his direct examination, the prosecutor requested permission from the trial court to develop the fact that defendant's "background" involved a criminal record. In arguing the admissibility of this evidence, the prosecutor stated:

> My position is the door should be open to continue the line of questioning as to what was the information. I have not objected to the hearsay nature of it. It goes to the motivation of the people who's throwing him off the property; it goes to their state of mind concerning his—as to why they are taking certain actions. The defense in this case is there is some kind of conspiracy against him to get him because of the fact that he's made trouble for them at the Arizona Horse Association, and this, if you will, will lay truth to that misconception that their concern was that this guy is known to them now to be a convicted felon for theft and they don't want him handling the books.

Defendant's counsel responded that he had not intended to have the witness mention defendant's background, that the witness's answer was unexpected, and that the evidence proposed by the prosecutor about defendant's criminal background was unfairly prejudicial. The trial court weighed the probative value of the proposed evidence against its prejudicial effect and ruled that the state could establish that defendant had a "criminal record," but would not be permitted to get into the specifics of defendant's prior convictions.

■ Defendant claims the trial court erred in permitting the state to show that he had a prior criminal history. He argues that there was no legitimate basis for admitting this evidence and that its admission violated Rule 404(b), Arizona Rules of Evidence. Defendant further argues, in the alternative, that if the evidence were in fact relevant, the trial court erred in not excluding it pursuant to Rule 403.

■ The trial court has considerable discretion in determining relevance and admissibility of evidence, and its ruling will not be disturbed absent a clear abuse of that discretion. *State v. Amaya–Ruiz,* 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990), *cert. denied,* 500 U.S. 929, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would without the evidence." This standard of relevance is not particularly high. *State v. Oliver,* 158 Ariz. 22, 28, 760 P.2d 1071, 1077 (1988). We find no abuse of discretion in the trial court's determination that the existence of defendant's criminal history was relevant to rebuttal of his conspiracy theory.

■ All relevant evidence is admissible unless otherwise prohibited by law. Rule 402. Rule 404(b) precludes evidence that is offered solely to show the character of a defendant to prove disposition to criminality.[1] *State v. Ramirez Enriquez,* 153 Ariz. 431, 432, 737 P.2d 407, 408 (App.1987). Evidence relevant for any purpose other than showing criminal propensities remains admissible even though it refers to a defendant's prior bad acts. *State v. Jeffers,* 135 Ariz. 404, 417, 661 P.2d 1105, 1118, *cert. denied,* 464 U.S. 865, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). Of course, the evidence must not be too misleading or prejudicial. *State v. Rose,* 121 Ariz. 131, 136, 589 P.2d 5, 10 (1978). Because the trial court is best able to balance the probative value versus the prejudicial effect, it is afforded wide discretion in deciding the admissibility of such evidence. *State v. Via,* 146 Ariz. 108, 122, 704 P.2d 238, 252 (1985),

---

1. Rule 404(b) provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*cert. denied,* 475 U.S. 1048, 106 S.Ct. 1268, 89 L.Ed.2d 577 (1986).

 Rule 403 permits the trial court to exclude relevant evidence that is confusing, misleading, cumulative, or unfairly prejudicial. A determination of the admissibility of evidence under Rule 403 is within the sound discretion of the trial court. *Readenour v. Marion Power Shovel,* 149 Ariz. 442, 450, 719 P.2d 1058, 1066 (1986). Moreover, in reviewing the trial court's ruling, we must look at the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect. *State v. Castro,* 163 Ariz. 465, 473, 788 P.2d 1216, 1224 (App.1989).

We find no error by the trial court in not excluding evidence of defendant's criminal background under either Rule 404(b) or Rule 403. The evidence was relevant and admitted for a purpose other than establishing criminal propensity. The trial court expressly weighed the prejudice of admitting this evidence against its probative value before deciding to admit it. Moreover, to reduce the prejudice to defendant, the trial court ruled that the evidence would be limited to the mere mention that defendant had a criminal record. Under the circumstances, we find no abuse of discretion in the trial court's decision to allow this evidence to be introduced.

### B. *Prosecutorial Misconduct*

 ▪ Defendant next contends that the prosecutor engaged in misconduct by making improper closing arguments. However, defendant did not object at trial to the prosecutor's arguments. Absent a finding of fundamental error, failure to raise an issue at trial waives the right to raise the issue on appeal. *State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

Error is fundamental when it reaches " 'the foundation of the case or takes from defendant a right essential to his defense,' " or is an " 'error of such dimensions that it cannot be said it is possible for a defendant to have had a fair trial.' "

*Id.* at 155, 812 P.2d at 628, *quoting State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

Defendant asserts that the prosecutor improperly argued that defendant's prior criminal record established that he was a "bad guy" and therefore more likely to have committed the charged offenses, thus violating Rule 404(b). Defendant identifies two instances where he claims this occurred. One statement he points to consists of the prosecutor telling the jury during his rebuttal argument that "you can draw inferences from his background." This statement, however, was made as part of the following argument:

You know, I notice Mr. Kiper is not smiling now, but during this trial from time to time and when I looked over there, I did notice he was smiling, and you noticed it too. And the reason is, I believe he's enjoying it or he was at that time. What we got here is a former pilot, a person who's used to living at the edge, a man who knows the joy of an adrenaline rush, who's used to being contentious in his interpersonal relationships and usually winning. But this time its not working. Now he's just a bookkeeper. And he relishes the excitement of that former life. You want to know why he steals money? You want to know answers to the question why? Because he likes the extra money. Because he enjoys taking people and bettering them.

I can't crawl into his mind, Mr. Butner can't crawl into his mind, and neither can you, but you can draw inferences from his background and his conduct and say to yourself, does it fit? He literally—or figuratively, I guess, is the better way to put it—figuratively is being shot at in the courtroom and he's shooting back at us. We're back in the cockpit, back when life was good and exciting.

When placed in context, it becomes clear that the reference to defendant's "background" was not made in relation to defendant's prior criminal history, but rather was a reference to his former career as a fighter pilot.

The prosecutor also made the following closing argument to the jury:

What it boils down to is we have another word that becomes the key in my estimation in this case, and it is called credibility. Who are you going to believe? You know that Kiper has a prior conviction at this point, but the reason that you are allowed to know that is that it shows sometime in the past he hasn't lived by society's rules. Now, when he came into this courtroom just like any other witness and he stood before the clerk and he took an oath to tell the truth, he was saying to you I'll live by the rules. But he's a person at least who has a track record of not having lived by the rules before. And that's a factor that you are entitled and should put into your equation with who am I dealing with here.

The prosecutor then continued on to discuss evidence concerning defendant's veracity and made a comparison to the credibility of Mr. and Mrs. Adams.

Although the prosecutor made a specific reference to defendant's prior criminal record, it was mentioned solely for the purpose of arguing against his credibility. At no time did the prosecutor argue that defendant's criminal background was evidence of his propensity to commit the charged offenses. Thus, the record does not support defendant's claim that the prosecutor made an improper "bad acts" argument in violation of Rule 404(b).

Although the prosecutor's closing arguments did not violate Rule 404(b), his use of defendant's criminal record to argue against credibility was outside the purposes for which that evidence was admitted. The fact that defendant had a criminal record was admitted by the trial court because of its relevancy to rebutting defendant's conspiracy theory. The prior convictions were not admitted for impeachment purposes because they were more than 10 years old. *See generally* Rule 609, Arizona Rules of Evidence.

 However, the misuse of this evidence to attack defendant's credibility does not rise to the level of fundamental error. First, in addition to defendant's failure to object when the argument was made, defendant did not request a limiting instruction to restrict the evidence to its proper scope. *See*

Rule 105, Arizona Rules of Evidence. In the absence of a limiting instruction, the evidence is in the record for all purposes. 21 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5065, at 330–31; *United States v. Trujillo*, 578 F.2d 285, 288 (10th Cir.1978). Second, all felonies have some probative value in determining a witness's credibility. *State v. Malloy*, 131 Ariz. 125, 127, 639 P.2d 315, 317 (1981). Thus, the evidence was not argued for an irrelevant evidentiary purpose.

Moreover, to the extent any unfair prejudice resulted, it was minimal. As our supreme court has observed:

> The chief danger to be avoided in limiting the admissibility of evidence of other crimes is the potential prejudice it will cause against the one accused of committing a crime.... Once that evidence is before the jury for one purpose, however we cannot see what substantial further prejudice will result from its use for the additional purpose of attacking the credibility of defendant after he had taken the stand to testify in his own behalf.

*State v. Smith*, 146 Ariz. 491, 500, 707 P.2d 289, 298 (1985) (citation omitted). Because evidence of defendant's criminal background was already before the jury for one proper purpose, we do not find its use by the prosecutor to argue credibility, to which defendant did not object, to be sufficiently prejudicial to deprive defendant of a fair trial. We thus find no reversible error on this basis.

### C. *Validity of the Jury Verdicts*

The verdicts were returned by the jury in open court in accordance with Rule 23.1, Arizona Rules of Criminal Procedure. After the verdicts were read, the trial court inquired if either counsel wished to have the jury polled. Defendant's counsel stated that he did. The trial court had the court clerk ask the jurors individually whether the six verdicts were their "true verdicts" and each juror answered "yes." The verdicts were then recorded and filed by the clerk.

Following the return of the verdicts, the trial court informed the jury that their services were still required for another matter

to be presented to them. Before proceeding with the issue of the state's allegations of prior convictions, however, the trial court recessed for lunch. The trial court's minute entry indicates this recess was taken at 11:23 a.m.

After lunch, the court met with counsel and defendant in chambers. During this meeting, defendant advised the trial court that he was willing to admit to each of the alleged prior convictions. The trial court questioned defendant about his convictions. Based on his responses, the trial court accepted defendant's admissions upon a finding that they were knowingly, voluntarily, and intelligently made, and that a factual basis existed for each admission.

Following a discussion of sentencing matters, the trial court stated that a note had been received from one of the jurors at 11:30 a.m. The note read:

I was the juror that hung this jury ever since deliberations started. I then changed my vote today but am presently emotionally upset and at the reading of the verdicts I couldn't look at Mr. Kiper and wanted to say stop.

Defendant requested that the trial court examine the juror on the grounds that the note indicated equivocation and doubt in the juror's mind. The trial court denied the request, noting that the jurors affirmed their verdicts when polled in open court and that substantial case law holds that the subjective motives and mental processes of a juror are not a proper area of inquiry to impeach a verdict. The trial court then discharged the jury.

■ Defendant contends that the trial court erred by denying his request that the juror who wrote the note be examined. He claims that the failure to examine the juror about her assent to the verdicts denied him the right to unanimous verdicts guaranteed by Article 2, Section 3 of the Arizona Constitution. In support of his claim of error, defendant notes that it is mandatory that the jury be polled upon request. *See* Rule 23.4, Arizona Rules of Criminal Procedure.

The purpose of polling the jury "is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned, and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *Miranda v. United States,* 255 F.2d 9, 17 (1st Cir.1958). In this case, the jury was polled by the trial court at defendant's request, and each juror declared his or her assent to the verdicts without reservation. Thus, the right to have the jury polled to insure the verdicts were unanimous was fully satisfied here.

■ A verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered. *United States v. White,* 972 F.2d 590, 595 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1651, 123 L.Ed.2d 272 (1993); *see also Hoffert v. State,* 319 Md. 377, 572 A.2d 536, 541 (App.1990). In *White,* the defendants were charged with two drug-related offenses. The jury returned a verdict of guilty on a lesser-included offense on Count 1 and informed the judge that they were unable to reach a verdict on Count 2. After polling the jury, the trial court accepted the verdict on Count 1 and excused the jury for the weekend. When the jury returned the following week, the court instructed them to continue deliberations on Count 2. During these further deliberations, the jurors asked the trial court if they could reconsider the verdict on Count 1. Over the defendants' objections, the trial court ruled that the jury was free to do so. The jury later returned verdicts of guilty on both counts as charged. On appeal, the trial court's decision to permit the jury to reconsider the verdict on Count 1 was held error because all steps for a final verdict existed when the jury returned the original verdict on that count. *Id.*

In the present case, all the requirements for final verdicts had been satisfied when the verdicts on the charged offenses were filed prior to the court taking the lunch recess. No member of the jury indicated any dissent when polled in open court. Thus, the verdicts became final, and were not subject to

further reconsideration by the jurors. Under these circumstances, it would have been error by the trial court to permit a juror to reconsider his or her decision after the verdicts had been filed. *See* Rule 24.1(d), Arizona Rules of Criminal Procedure.

 Contrary to defendant's position, the fact that the jury had not yet been discharged because of the state's allegation of prior convictions does not render the guilty verdicts on the substantive offenses any less final. A jury's decision on the issue of the prior convictions is separate and distinct from its consideration of the substantive charges. *See State v. Johnson*, 155 Ariz. 23, 26–27, 745 P.2d 81, 84–85 (1987) (when mistrial declared during the prior convictions phase of a trial, appropriate to reschedule new trial on prior convictions only). The concept that the two proceedings are separate matters is recognized in Rule 19.1(b)(2), Arizona Rules of Criminal Procedure, which provides that the issue of defendant's prior convictions is to be tried by the jury only *after* a guilty verdict is returned on the charged offense.

Because no juror dissented to the verdicts upon being polled, the verdicts became final when they were accepted and filed by the trial court. Thus, the trial court was correct in ruling that questioning the juror about her thoughts would violate the prohibition against considering a juror's subjective motives or mental processes with respect to the validity of a verdict after it has been rendered.

### CONCLUSION

None of the issues raised by defendant justifies reversal of his convictions. In addition, pursuant to A.R.S. § 13–4035, we have reviewed the record for fundamental error and none has been found. Accordingly, defendant's convictions and sentences are affirmed.

WEISBERG, P.J., and GERST, J., concur.

NOTE: The Honorable STEPHEN A. GERST was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 3.