NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREW LUIS GOMEZ, *Appellant.*

No. 1 CA-CR 15-0032
FILED 2-23-2016

Appeal from the Superior Court in Maricopa County
No. CR2010-105026-001-SE
The Honorable Pamela D. Svoboda, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, P.C., Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1          Andrew Luis Gomez ("Gomez") appeals his convictions and sentences for one count of aggravated assault, one count of unlawful imprisonment, and one count of misconduct involving weapons. Gomez's counsel has filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000); *Anders v. California*, 386 U.S. 738 (1967); and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), stating that he has searched the record on appeal and found no arguable question of law that is not frivolous. Gomez's counsel therefore requests we review the record for fundamental error. *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30, 2 P.3d 89, 96 (App. 1999) (stating that this court reviews the entire record for reversible error). We allowed Gomez to file a supplemental brief *in propria persona*, but he has not done so.

¶2          We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A).[1] Finding no reversible error, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

¶3          In 2010, a grand jury indicted Gomez, charging him with one count of aggravated assault—a class 3 dangerous felony and a domestic violence offense; one count of unlawful imprisonment—a class 6 felony and a domestic violence offense; and one count of misconduct involving weapons—a class 4 felony. *See* A.R.S. §§ 13-1203, -1204, -1303, -3102, -3601.

---

[1]     We cite the current version of the applicable statutes unless revisions material to this decision have occurred since the dates of the offenses.

[2]     We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

The State also alleged the assault offense in count 1 was dangerous. *See* A.R.S. § 13-704.

**¶4** At trial, the State presented the following evidence: Gomez had multiple prior felony convictions and was therefore prohibited from possessing firearms. One late afternoon, Gomez's cousin D.A. drove her Ford Bronco to Gomez's house to transfer the truck to him. They had been involved in a romantic relationship that had ended months earlier; Gomez promised he would leave her alone after the transfer. Upon D.A.'s arrival at Gomez's house, Gomez asked D.A. to take him to a water store for a jug of water and an automobile supply shop to recharge the truck's battery. After they finished the errands, Gomez invited D.A. to go inside his house for drinks. They had a few cans of beer in the bedroom, which was the only room in the house having electricity; Gomez then became upset and started to blame D.A. for the problems he was facing. Feeling uncomfortable, D.A. stood up and told Gomez she wanted to leave. Gomez told her she was not going anywhere and stood in the doorway, blocking the exit. When D.A. tried to get out of the room, Gomez pulled out a gun from the back of his pants and shot D.A. in her left thigh. The bullet shattered D.A.'s femur bone, missing her femoral artery by less than half an inch; the pain from the gunshot wound sent D.A. falling to the floor, with blood gushing out of her leg. While D.A. was trying to stop the bleeding with her bare hands, Gomez attempted to place the gun in her right hand. D.A. slapped the gun off her hand; seeing his attempt failed, Gomez walked away to change his shirt. Unable to move, D.A. begged Gomez to take her to the hospital and, in exchange, she would not tell anybody he shot her.

**¶5** Gomez bandaged D.A.'s leg to slow down the bleeding and carried her to the Bronco. Instead of immediately driving D.A. to the hospital, however, Gomez went back to, and lingered at, the house for approximately five minutes. On the way to the hospital, Gomez instructed D.A. to say her injury was caused by a drive-by shooting. Later, while at the hospital,[3] D.A. initially recited this story of a drive-by shooting; but, with the encouragement from her uncle, she recounted the real story to the law enforcement. Gomez was then arrested at the hospital.

**¶6** During the police investigation, gunshot residue was detected in the samples collected from Gomez's left hand; also the front of Gomez's left shoe was stained with blood. While Gomez was in jail waiting for trial,

---

[3] This hospital was different from the one Gomez and D.A. initially arrived at. D.A. was helicoptered to the second hospital for the gunshot wound to be treated; Gomez drove in the Bronco to the second hospital.

he sent D.A. a letter, threatening her with violence if she were to testify against him, and called his ex-stepfather to retrieve Gomez's safe from Gomez's house before its foreclosure. A cleaning crew of the house hired by the bank during foreclosure found a gun in the safe, together with Gomez's other belongings. The gun contained DNA from both Gomez and D.A.

¶7        Several months before the shooting, D.A. had reported to law enforcement another incident of domestic violence by Gomez toward her at his house when she went there with a friend to retrieve her bicycle. In that incident, Gomez hit her with a broomstick from behind and strangled her until she became unconscious. When Deputy Sterns with Maricopa County Sheriff's office called Gomez at Gomez's cell phone and introduced himself as an officer investigating the incident, Gomez denied he was the person the officer was looking for and disconnected the call.

¶8        Gomez testified in his own defense. He claimed D.A. instead shot herself because of her jealousy over Gomez's relationship with another woman. Gomez denied he wrote the threatening letter or that he ever possessed the gun. He also denied the prior incident of domestic violence, explaining he disconnected the investigator's call after a person, without any self-introduction, called him looking for someone named "Richard."

¶9        The jury found Gomez guilty as charged, and that counts 1 and 2 are offenses of domestic violence. The court found the offense in count 1 was dangerous due to the use of a gun and sentenced him to concurrent terms of 10 years' imprisonment for counts 1 and 3, and 3.75 years' imprisonment for count 2, with credit for 1807 days of presentence incarceration. Gomez timely appealed.

## ANALYSIS

¶10        We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881; *Clark*, 196 Ariz. at 537, ¶ 30, 2 P.3d at 96. The evidence presented at trial was substantial and supports the verdicts, and the sentences were within the statutory limits. Gomez was represented by counsel at all stages of the proceedings and allowed to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

¶11        After filing of this decision, defense counsel's obligations pertaining to Gomez's representation in this appeal have ended. Counsel need do no more than inform Gomez of the status of the appeal and of his

future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156–57 (1984). Gomez has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

**CONCLUSION**

¶12         Gomez's convictions and sentences are affirmed.

