NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

MEGAN LINDSEY JOHNSON, *Appellant*.

No. 1 CA-CR 18-0355
FILED 4-30-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-147084-002 DT
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

———————————————

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Kenton D. Jones joined.

———————————————

**W I N T H R O P**, Judge:

**¶1**        Megan Lindsey Johnson appeals her convictions and sentences for one count of possession or use of dangerous drugs, one count of possession or use of narcotic drugs, two counts of possession of drug paraphernalia, and one count of possession or use of marijuana.  Johnson argues the trial court erred by not declaring a mistrial *sua sponte* after a witness on cross-examination mentioned the presence of weapons in the motel room where police officers had been called and found the drugs and drug paraphernalia attributed to her.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

**¶2**        In October 2016, Johnson, who was on probation for two prior felony convictions[2] and had been staying at a low-budget motel for ten to twelve days, missed the deadline to pay the daily room rental fee and failed to check-out.  Phoenix Police Officers Blunt and O'Connor responded to a "trespasser" call from the motel, and after being directed to Johnson's room, knocked and announced themselves as police officers.  Johnson opened the door and tried to immediately walk out of the room and close the door behind her, but due to officer safety concerns, Officer O'Connor put his foot in the doorjamb to keep her from closing the door.  Through the open doorway, the officers saw a man sitting on the bed trying to hide a piece of aluminum foil marked with black lines, which the officers immediately recognized as an indicator of heroin use.  The officers told Johnson why they were there and asked her to sit.  Although Johnson initially refused,

———————————————

[1]        We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Johnson.  *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

[2]        *See* Maricopa County Case No. CR2014-005430-002.

and she and the man became argumentative, the officers eventually detained them and entered the room.

¶3        Inside the room, both officers immediately observed in plain view what appeared to be crystal methamphetamine and marijuana in clear plastic bags on the nightstand.  They also observed several weapons in the room, including three handguns and a twenty-gauge shotgun.  Inside the nightstand, the officers found syringe needles typically used for injecting heroin, a bulbous glass meth pipe, an electronic scale, cigarette papers, a cannister for storing marijuana, additional aluminum foil wrappings and clear plastic baggies, and substances that appeared to be methamphetamine and heroin.

¶4        After advising Johnson of her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Officer O'Connor collected and inventoried the items discovered in the motel room, while Officer Blunt escorted Johnson and the man to the officers' patrol cars.  As he did so, Officer Blunt asked Johnson who the drugs belonged to, and she denied knowing, but admitted she was a "drug user" and, specifically, a "heroin addict."  Subsequent field testing and forensic testing at the Phoenix Police Department's Crime Laboratory confirmed the substances discovered in Johnson's room were what the officers believed them to be—usable quantities of methamphetamine, heroin, and marijuana.

¶5        A grand jury indicted Johnson on seven counts, including: Counts I and II, misconduct involving weapons, each a class four felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13-3102(A)(4); Count III, possession or use of a dangerous drug (methamphetamine), a class four felony, in violation of A.R.S. § 13-3407(A)(1); Count IV, possession or use of a narcotic drug (heroin), a class four felony, in violation of A.R.S. § 13-3408(A)(1); Counts V and VI, possession of drug paraphernalia, each a class six felony, in violation of A.R.S. § 13-3415(A); and Count VII, possession or use of marijuana, a class six felony, in violation of A.R.S. § 13-3405(A)(1).  Before trial, the State filed allegations of two historical prior felony convictions, aggravating circumstances, and offenses committed while on release from confinement, as well as a request for a Rule 609 hearing.  *See* Ariz. R. Evid. 609.

**¶6** Counts I and II (the misconduct involving weapons counts) were severed from Counts III through VII (the drug-related counts),[3] and as relevant to this appeal, the drug-related counts proceeded to trial. Johnson's defense at trial centered on her theory that the contraband present in her motel room was the property of the man sitting on the bed (her boyfriend) and she lacked the requisite knowledge to possess the drugs or drug paraphernalia because she was unaware of those items and was merely present in the room. The court instructed the jury on mere presence and the elements of the crimes, including the requirement that, to find Johnson guilty, the jury must find that Johnson possessed or used each of the drugs at issue.

**¶7** The jury found Johnson guilty on all five counts. The trial court accepted her admission that she was on felony probation at the time of the offenses, and after Johnson rejected any further probation, the court sentenced her to concurrent, presumptive sentences, with the longest being ten years' imprisonment, on Counts III through VII.[4]

**¶8** Johnson filed a timely notice of appeal. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## ANALYSIS

**¶9** Johnson argues the trial court erred by not declaring a mistrial *sua sponte* after Officer Blunt mentioned on cross-examination the presence of weapons in the motel room where the police officers found the drugs and paraphernalia attributed to Johnson.

### I. Standard of Review

**¶10** When a witness unexpectedly offers an inadmissible statement at trial, the action called for rests largely within the sound discretion of the trial court, which must decide if a remedy short of mistrial

---

[3] Trial was first held on the misconduct involving weapons counts, but resulted in a hung jury, and the court declared a mistrial. Later, before sentencing on the drug-related counts, the court dismissed Counts I and II without prejudice on the State's motion.

[4] For Johnson's two convictions and probation violations in Maricopa County Case No. CR2014-005430-002, the court sentenced her to concurrent, presumptive one-year sentences, to be served consecutively to the sentences imposed in Counts III thorough VII.

will cure the error. *See State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000); *State v. Adamson*, 136 Ariz. 250, 262 (1983). "A declaration of a mistrial is the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *Adamson*, 136 Ariz. at 262 (citation omitted). In deciding whether a mistrial is warranted, the court must consider "(1) whether the testimony called to the jurors' attention matters that they would not be justified in considering in reaching their verdict and (2) the probability under the circumstances of the case that the testimony influenced the jurors." *State v. Lamar*, 205 Ariz. 431, 439, ¶ 40 (2003) (citation omitted).

¶11        "If a party wants a mistrial, it ordinarily must ask for one." *State v. Laird*, 186 Ariz. 203, 207 (1996). A defendant who fails to either request that testimony be stricken, with limiting instructions given, or request a mistrial has generally waived her objection absent fundamental error. *See State v. Ellison*, 213 Ariz. 116, 133, ¶ 61 (2006). Under fundamental error review, a defendant must first establish trial error exists, and then show the error was fundamental because it (1) went to the foundation of her case, (2) took from her a right essential to her defense, or (3) was so egregious that she could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). A defendant who establishes fundamental error under prongs one or two must make a separate showing of prejudice, which requires proof that a reasonable jury could have reached a different verdict. *Id.* at 142, 144, ¶¶ 21, 29 (citations omitted).

    II.    *Factual Background*

¶12        Johnson's claim stems from testimony elicited during defense counsel's cross-examination of Officer Blunt. Defense counsel began asking Officer Blunt about the various things he saw in Johnson's motel room, and the positioning of the people and items in that room. The following exchange then occurred:

    Q. What other items were there in terms of clothes, boxes, bags?

    A. There was just -- there was [sic] weapons.

Defense counsel objected to the statement and asked to approach the bench. The trial court immediately sustained the objection and ordered the testimony "stricken from the record" before conducting a bench conference with the attorneys.

¶13 During the bench conference, defense counsel argued the statement was "highly prejudicial" and the officer had been "admonished not to say anything about weapons." The prosecutor disputed the officer had been so admonished, but offered to do so at that time. The trial court agreed to take a recess to decide how to proceed and offered Johnson a curative instruction, while cautioning that the instruction "may just draw more attention to [the testimony]." Defense counsel simply responded, "I want to make sure he knows not to say anything."

¶14 The trial court dismissed the jury for the afternoon recess, and the prosecutor requested argument on the issue because Johnson had not made a "formal motion in limine." Defense counsel replied, "Judge, I would ask that the officer be admonished not to mention anything about weapons." The prosecutor argued that, given Johnson's defense that she was unaware of the drugs and drug paraphernalia in the motel room, her knowledge of other items in the room (i.e., weapons) was "germane to the issue of whether she had knowledge" of the drugs and paraphernalia at issue. Defense counsel disagreed, arguing it was "getting into the trial about the guns."

¶15 Noting the misconduct involving weapons counts had been severed, the trial court granted Johnson's motion to admonish the officers not to mention the guns, repeated the evidence was stricken from the record, and again offered Johnson a curative instruction. Defense counsel declined the offer, stating, "I don't plan to request a curative instruction." Before concluding the matter, the prosecutor requested "permission to readdress this issue after the defendant testifies, should it become relevant," and the trial court agreed.

¶16 Johnson later chose to testify at trial and admitted having two prior felony convictions. She also admitted she was a heroin addict from "about 2013 to 2014" but claimed she was "clean" at the time of her arrest. She further admitted her boyfriend was a drug addict with whom she had gotten high "[a]bout six months before this incident."

¶17 Johnson characterized the incident as a domestic dispute for which her boyfriend was to blame. She claimed she had checked into and was staying at the motel alone because she was trying to break up with her boyfriend, who was "financially trapping" her. She had chosen that motel because it was "what [she] could afford."

¶18 On the day of her arrest, she left the room between approximately 10:30 and 11:00 a.m. to get money to pay her motel bill.

When she returned approximately fifteen to thirty minutes later, her boyfriend was in the room without her permission. From that time until police officers arrived at 12:50 p.m., she was in the room with her boyfriend. She knew her boyfriend "had brought some items with him," including his backpack, which she noticed was blue, closed, and "at least half full," but claimed she never noticed any illicit items, including the tinfoil on the bed. She claimed she tried to close the door on the officers to keep her five dogs from getting out of the room, not because she knew what illegal items were inside. She did not dispute the officers found methamphetamine, heroin, and marijuana in her motel room, as well as each of the numerous items of drug paraphernalia, but claimed she didn't see any drugs or drug paraphernalia in the room until the officers "started pulling it out of the [nightstand] drawer."

¶19 Near the end of Johnson's cross-examination, the prosecutor asked to approach the bench, and a brief bench conference ensued. The prosecutor requested "permission to introduce the weapons that were in the room," including "a 20-gauge shotgun, an instrument that is in excess of three feet long that she is saying that she had no reason to look around the room and consider whether there were things there that she shouldn't have." Defense counsel objected, and the prosecutor continued, "The issue is not whether she possessed the guns. The issue is whether she had reason to believe that it would be prudent to look around and see what was in the room. I believe that, in the rebuttal, the officer outside could testify that the meth was located next to a firearm." The court expressed its concern that what "we are getting into[] is the fact that she would need to look for them because she is on probation." The prosecutor replied, "Well, the reason we severed [Counts I and II from Counts III through VII] is not because the guns are prejudicial to the drugs. The reason we severed them is because the introduction of the defendant's prior felony convictions are [sic] prejudicial to the drugs as the necessary element to misconduct involving weapons. The defendant's priors are already out there, she is on the stand. So the prejudice that leads the Court to sever the counts is actually evaporated at this point." After further discussion, the court stated it wished to consider the matter further and asked the prosecutor to continue with her cross-examination.

¶20 After concluding her cross-examination, the prosecutor renewed her motion, defense counsel objected, and the court dismissed the jury for a mid-afternoon recess. The court then denied the motion, explaining, "[T]he State wanted to inquire as to the presence of the shotgun and . . . a handgun that were found in the [m]otel room," and though "clearly relevant," "the danger of unfair prejudice substantially outweighs

the probative value." *See* Ariz. R. Evid. 403. The court asked defense counsel if he had "anything else" to say, and defense counsel replied, "No, thank you, Judge."

### III. The Merits

**¶21** Johnson argues the trial court erred in deciding "to not do anything about what the jury had just heard [Officer] Blunt say" about the presence of weapons in Johnson's motel room. Her argument is contradicted by the record, however, because the trial court (1) sustained defense counsel's objection, (2) struck Officer Blunt's testimony, (3) directed the prosecutor to admonish the officers not to further mention weapons during their testimony, and (4) repeatedly offered Johnson a curative jury instruction.

**¶22** Further, at the beginning of trial, the court cautioned the jury that it must not consider for any purpose any evidence rejected or struck from the record, and the court reiterated this instruction in its final instructions to the jury, stating, "If the Court sustained an objection to a lawyer's question, you must disregard it and any answer given. Any testimony stricken from the court record must not be considered." The court also instructed the jury that it must follow all the instructions given it. We presume the jury followed the court's instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶¶ 68-69 (2006).

**¶23** Moreover, Johnson's counsel repeatedly declined the trial court's offers of an additional curative jury instruction and did not request a mistrial; accordingly, Johnson must demonstrate not only that Officer Blunt's testimony was error, but that the error was fundamental and prejudicial. *See Ellison*, 213 Ariz. at 133, ¶ 61; *State v. Henderson*, 210 Ariz. 561, 567-69, ¶¶ 19-26 (2005). On this record, Johnson has demonstrated neither. Johnson received a fair trial, has not shown the jury was influenced by the stricken testimony, and has not shown that a reasonable jury could have reached a different result. *See Escalante*, 245 Ariz. at 142, 144, ¶¶ 21, 29. The evidence against her was overwhelming, and we find no fundamental, prejudicial error.[5]

---

[5] Also, Johnson's argument that the prosecutor improperly attempted to further "tarnish" her character by arguing that Officer Blunt's statement was admissible—and ostensibly by arguing that further statements about the weapons should be admissible as impeachment evidence—is a *non*

## CONCLUSION

¶24        Johnson's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

*sequitur* because the court struck the testimony and instructed the prosecutor to admonish the officers to not further mention weapons during their testimony.  Neither Officer Blunt nor Officer O'Connor provided any further testimony regarding weapons.