NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

KEVIN RANDALL KELLEY, *Appellant*.

No. 1 CA-CR 20-0532
FILED 6-24-2021

---

Appeal from the Superior Court in Yavapai County
No. V1300CR201980319
The Honorable Michael R. Bluff, Judge

**AFFIRMED AS MODIFIED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Law Offices of Gonzales & Poirier, P.L.L.C., Flagstaff
By Antonio J. Gonzales
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

**¶1**        Kevin Randall Kelley ("Appellant") appeals his conviction and sentence for aggravated assault.  Appellant's counsel has filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating he has searched the record on appeal and found no error or arguable question of law.   Appellant's counsel therefore requests that we review the record for fundamental, reversible error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999) (stating that this court reviews the entire record for reversible error).  This court allowed Appellant to file a supplemental brief *in propria persona*, but he has not done so.

**¶2**        We have appellate jurisdiction.  *See* Ariz. Const. art. 2, § 24; art. 6, § 9; Ariz. Rev. Stat. ("A.R.S.") §§ 12-120.21(A)(1), 13-4031, -4033(A). Finding no reversible error, we affirm Appellant's conviction and sentence, as modified to reflect credit for thirty-five additional days of presentence incarceration.

**FACTS AND PROCEDURAL HISTORY**[1]

**¶3**        A grand jury issued an indictment charging Appellant with Count I, aggravated assault on a peace officer, a class four felony, in violation of A.R.S. §§ 13-1204(A)(8)(a) and 13-1203(A)(1) (causing physical injury to a peace officer); and Count II, aggravated assault on a peace officer, a class five felony, in violation of A.R.S. §§ 13-1204(A)(8)(a) and 13-1203(A)(2) (placing a peace officer in reasonable apprehension of imminent physical injury).  The State later alleged Appellant had seven prior felony convictions, *see* A.R.S. § 13-703(C), and alleged the existence of numerous aggravating circumstances, *see* A.R.S. § 13-701(D).

---

[1]      We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64 (App. 1994).

¶4          Before trial, defense counsel moved for Appellant to be evaluated pursuant to Rule 11, Ariz. R. Crim. P.  Based on a preliminary Rule 11 evaluation, the trial court found Appellant competent but issued an order for new counsel after finding irreconcilable differences existed between Appellant and his counsel.  Appellant was assigned new defense counsel, but the court subsequently granted Appellant's request to represent himself and appointed advisory counsel to assist him.  Appellant later affirmatively waived his right to a jury trial and elected to have a bench trial instead.  At a voluntariness hearing held before trial, the court found Appellant's statements to law enforcement officers had been voluntarily made.

¶5          A two-day bench trial was held on July 7 and 8, 2020.  At trial, the State presented the following evidence:  On April 28, 2019, at approximately 9:40 p.m., Officer Carver of the Yavapai Apache Police Department ("YAPD" or "the tribal police") was on duty in her patrol car when she pulled into the drive-thru of a fast-food restaurant.  Appellant then walked up to the drive-thru window and asked the employee at the window about a job.  Officer Carver recognized Appellant from prior contacts, and while waiting for her food order, the officer checked and discovered Appellant had both a non-extraditable arrest warrant out of Mohave County and a recent arrest warrant issued by the Verde Valley Justice Court.

¶6          After verifying the warrants, Officer Carver followed Appellant, who had walked next door to a gas station/convenience store.  Officer Carver exited her patrol car and advised Appellant that he had an outstanding arrest warrant and she needed to detain him.[2]  Appellant stated he was surprised by the existence of any warrant, which he assumed had been issued by the Yavapai Apache Nation's tribal court, and stated he first needed to get his identification out of the store.  Appellant then took off running.  Officer Carver followed and searched for Appellant.

¶7          As he ran away, Appellant called 911.  He explained to the 911 operator that the police were chasing him, he did not know what they wanted, and he had no warrants.  He also asked to speak with someone from the Camp Verde Marshal's Office or someone not associated with the tribe.  When the 911 operator told Appellant that officers from the Camp

---

[2]     Officer Carver activated her body camera to record the encounter.  A video of the encounter was played at trial.

Verde Marshal's Office were already looking for him and wished to speak with him, he hung up and continued to run.

¶8        At approximately 11:10 p.m., Officer Carver again located Appellant.  When Appellant saw Officer Carver, he walked toward her, raised his hands as if giving up, and said he was tired of running.[3]  Officer Carver ordered Appellant to put his hands behind his back, and he turned around as if complying with her order.  As Officer Carver attempted to handcuff him, Appellant whirled around and "sucker-punched" her in the left temple with a closed right fist.  The blow knocked Officer Carver to the ground, causing her to feel dazed and disoriented and as though she had been "hit with a baseball bat."  After knocking Officer Carver to the ground, Appellant turned and ran away.

¶9        Officer Carver contacted the dispatch operator for help and attempted to follow Appellant in her patrol car.  She stopped driving, however, because she began seeing double and things appeared to be spinning.  A deputy with the Camp Verde Marshal's Office arrived and assisted Officer Carver, who then received medical assistance from the fire department.  Officer Carver had an approximately two-inch bruise on the top of her head that kept swelling, and she was transported to a nearby medical center, where she was diagnosed with a closed-head injury after a CT scan.  For the next two weeks, Officer Carver suffered from dizziness and headaches from her head injury.

¶10        Several law enforcement officers assisted in searching for Appellant.  Several hours later, they located and arrested him, read him his *Miranda* rights,[4] and received statements from him.[5]  Appellant admitted punching Officer Carver because he did not want to go to jail.

¶11        At trial, Appellant testified in his own defense.  During his testimony, the trial court conducted a hearing pursuant to Arizona Rule of Evidence 609, found Appellant had at least six prior felony convictions, and

---

[3]        Officer Carver again activated her body camera during this second encounter with Appellant.  A video of the second encounter was played at trial.

[4]        *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[5]        This encounter with Appellant was also recorded on a body camera, and the video was played at trial.

allowed the State to impeach Appellant with his prior felony convictions. Appellant's defense appeared to be based on his supposition that the Yavapai Apache Nation—and by extension, the tribal police (or YAPD)—no longer had authority or jurisdiction over him.

¶12 Appellant testified he disenrolled from the Yavapai Apache Nation on December 20, 2018, because of issues he had on the reservation with the YAPD. On March 11, 2019, while off the reservation, he was pulled over by the YAPD and issued a citation because his driver's license was suspended, revoked, or cancelled. Appellant admitted not having a license for a long period of time and knowing he had a suspended or revoked license on March 11, 2019. Appellant also acknowledged signing the citation and promising to appear at the Verde Valley Justice Court on March 26, 2019. Instead, he went to Alabama for approximately one month and made no effort to contact the court and continue the matter. On March 21, 2019, Appellant was banished from the reservation for ten years, and a warrant for Appellant's arrest was later issued in the Verde Valley Justice Court due to his failure to appear on the citation for driving with a suspended, revoked, or cancelled license. He had recently returned from Alabama when the incident involving Officer Carver occurred.[6]

¶13 While testifying, Appellant admitted he had "anger issues" and "violent tendencies" and had "violently punch[ed Officer Carver] with a hard closed fist" without provocation. He apologized in court for doing so, and said that after he slugged Officer Carver, he ran the other direction and had no intention of hitting her again. He claimed he had run near some bushes and was not still near her when he heard her say "get away, get away."

---

[6] Officer Carver was aware Appellant had relinquished his membership in the Yavapai Apache Nation in December 2018 and that he had been banished from the tribe's reservation. She further testified, however, that the tribal court order disenrolling Appellant as a member of the tribe did not affect her authority to look for non-tribal state and federal ("stateside") warrants as a certified law enforcement officer. Chief Huibregtse of the YAPD, who assisted in the search for Appellant, also confirmed that nothing about Appellant's banishment limited the authority of state-certified peace officers to effect a stop and arrest. Appellant impeached Chief Huibregtse with *Brady* material regarding his previous resignation and termination. *See Brady v. Maryland*, 373 U.S. 83 (1963).

**¶14** The trial court took the matter under advisement, then found Appellant guilty on Count I and not guilty on Count II. At sentencing, the court found Appellant had at least two historical prior felony convictions and an additional felony conviction as an aggravating factor. The court found as mitigating factors that Appellant had family and community support. The court sentenced Appellant as a Category 3 repetitive offender to a presumptive term of ten years in the Arizona Department of Corrections and credited him for 504 days of presentence incarceration.[7] The court also ordered that Appellant pay $2,096.08 in restitution as well as other applicable fines, surcharges, fees, and assessments.

**¶15** Appellant filed a timely notice of appeal.

## ANALYSIS

**¶16** We have reviewed the record for reversible error and find none. *See Leon*, 104 Ariz. at 300; *Clark*, 196 Ariz. at 537, ¶ 30. The evidence presented at trial was substantial and supports Appellant's conviction and sentence. Appellant was represented by counsel or assisted by advisory counsel at all stages of the proceedings and was given the opportunity to speak at sentencing. The proceedings were conducted in compliance with his constitutional and statutory rights and the Arizona Rules of Criminal Procedure.

**¶17** After filing of this decision, defense counsel's obligations pertaining to Appellant's representation in this appeal have ended. Counsel need do no more than inform Appellant of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Appellant has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

---

[7] The record reflects Appellant was arrested and booked into custody on April 29, 2019, and he remained in custody until he was sentenced on October 19, 2020. Thus, Appellant was incarcerated for 539 days before the day of sentencing, and he should be credited for thirty-five additional days of presentence incarceration. When we find a miscalculation in credit, we may correct the error by modifying the sentence without remanding to the trial court. *See State v. Stevens*, 173 Ariz. 494, 496 (App. 1992). Accordingly, we modify Appellant's sentence to reflect thirty-five additional days of presentence incarceration credit.

**CONCLUSION**

**¶18**        Appellant's conviction and sentence are affirmed, as modified to reflect credit for thirty-five additional days of presentence incarceration.



AMY M. WOOD • Clerk of the Court
FILED:     AA